Charles Lee **HADNOT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–94–131 CR.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 23, 1994.

Decided Oct. 12, 1994.

Inez Knight, Woodville, for appellant.

James A. Clark, Criminal Dist. Atty., Woodville, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

A timely appeal brought from a conviction for terroristic threat. The appellant was tried by a jury on a plea of not guilty in the County Court of Tyler County. The jury convicted the appellant and the court assessed his punishment at confinement in the Tyler County Jail for six months, a fine of $500 plus all court costs allowed by law, coupled with 200 hours of community service. The sentence was suspended and the appel-

lant was placed on community supervision for a period of one year with a condition of probation that the appellant be confined in the county jail for a period of 14 days.

The appellant's brief presents four points of error. The four points of error are:

I. Whether appellant was denied a fair trial because the prosecutor repeatedly misstated the law.

II. Whether appellant was denied due process of law because he was convicted without an essential element of the offense charged proven beyond a reasonable doubt.

III. Whether the Court's charge to the jury was fundamentally defective.

IV. Whether conduct of trial counsel denied appellant the effective assistance of counsel and a fair trial.

During voir dire, the district attorney simply stated that the appellant, Mr. Hadnot, was charged with the offense of terroristic threat. The district attorney advised the panel that the court would instruct the jury as to what that means in the court's charge. The district attorney briefly described the meaning of serious bodily injury. The prosecutor correctly stated that the State has the burden, at all times, of proving the defendant guilty beyond a reasonable doubt. The charging instrument alleged that the appellant did intentionally and knowingly threaten to commit an offense involving violence to wit: an assault upon James M. Gerbig with the intent then and there to place James M. Gerbig in fear of imminent serious bodily injury. The charging instrument was not challenged or attacked by any motion to quash or by objections or exceptions. The exact wording of TEX. PENAL CODE § 22.07 dealing with terroristic threats does not possess absolute exactitude. It reads:

§ 22.07. Terroristic Threat

(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

. . .

(2) place any person in fear of imminent serious bodily injury;

The words used themselves indicate the person commits an offense with the intent to place any person in fear of imminent serious bodily injury. Therefore, if the complainant person experiences fear of imminent serious bodily injury, that is an appropriate consideration for the jury to weigh because that fear at least tends to demonstrate the intent of the actor. The comment made by the district attorney at voir dire was in explanation of the information. The district attorney did state that whether Mr. Gerbig, the complainant, feared that the appellant would assault him was a pertinent inquiry or issue in the case. The statement was not repeated. No objection was made by defense counsel.

Also in the opening statement for the prosecution, the jury was told that it was the position of the State that Mr. Hadnot had the intent to place Mr. Gerbig in fear of imminent serious bodily injury because of their past experiences and that the prosecution felt, from the anticipated evidence, that the evidence would show that Gerbig was placed in fear of imminent serious bodily injury and that that was Mr. Hadnot's intent. No objection was made to this opening statement. No rulings were sought from the trial judge. No rulings were obtained from the trial judge. Therefore, nothing is presented for appellate review. Appellant's point of error number one is overruled.

■ Appellant's point of error number two asserts that the appellant was denied due process of law because he was convicted without an essential element of the offense charged proven beyond a reasonable doubt. The statement of facts concerning the testimony on the merits has been read and reviewed. The evidence of James M. Gerbig and Kathy Gerbig, his wife, has been analyzed. After the Gerbigs' testimony, the State rested its case-in-chief.

The defendant's evidence consisted of the testimony of Charles Lee Hadnot, Rebecca Renea Hafford, and Alma Jean Mitchell Hadnot. The State put on James and Kathy as rebuttal witnesses. The State rested after rebuttal and the defendant immediately rested. The fact finders obviously believed the State's theory of the case and the prosecution's witnesses. It would serve no useful purpose to recite in detail the statement of facts before us which contains a number of purple words and four letter English words.

The prosecution showed that the complainant was getting and pumping gas into his own car at which time the appellant drove up. The complainant said, according to the record, "How is it going Charles?" According to the State's theory and according to the State's evidence, which the fact finders had a right to believe, the first thing the appellant said was, "F---, you, Mike." The complainant testified that the appellant was intoxicated. The complainant said nothing in response to the greeting and kept pumping gas. Then, according to the complainant, the appellant leaned over on the complainant and said, "You have got enough f------ gas, give me the pump." Again, the complainant made a conciliatory statement, something like, "Charles I am just getting my gas. Just leave me alone and I am just getting my gas."

The complainant was at the only unleaded regular gas pump. The complainant said that the appellant continued to curse the complainant. At one point or another the appellant called the complaint a "M----- F-----". Next, the appellant threatened to cause injury to the complainant stating, "We are going to get it on." Then a passenger got out of appellant's car and walked to the back of the Camaro. The Camaro was being driven by appellant. Then, the testimony raises the issue that the appellant said, "I am going to kick your a—right here and right now." But no response came from the complainant. The complainant explained that he was not a physical match for Hadnot and that Hadnot was drunk. Later, the complainant testified that Hadnot said, "I know where your Daddy lives Mike. I know your daddy's name. Your daddy's name is son of a b----." Then, according to the record, the appellant said, "I will whip his a—too"—referring to the father of the complainant.

Admittedly there had been some problem and some trouble between the complainant and the appellant in the past. The complainant's version was that one night the appellant drove up to the complainant's gate and there was a verbal interchange. However, the complainant was 50 yards away from the

gate and asked the appellant to leave. Apparently, this confrontation arose from some allegation made by someone stating that the appellant had trespassed on the complainant's 160 acres of land. The complainant thought that the appellant had trespassed for the purpose of hunting. The complainant and his wife disallowed hunting on the complainant's 160 acres.

The position on that issue of trespass of the appellant was that the appellant had never trespassed on the 160 acres. However, the appellant's uncle had permission to do so and had hunted on the 160 acres. The problem allegedly arose when six marijuana plants turned up missing on the 160 acres according to the appellant. The basic thrust of the appellant's position was the complainant was growing marijuana plants on his 160 acres and did not want anybody hunting on it because the marijuana might well be discovered. Of course, the complainant denied the marijuana theory.

■ Nevertheless, all these matters are issues for the jury. The jury was properly instructed and properly charged. There is ample evidence of probative force and evaluation to support the verdict of the jury. The jury is to resolve conflicts in the evidence and the jury can, under well-accepted Texas law, believe all of one witness or believe none of that witness' testimony. The jury is also fully empowered to believe part of a witness' testimony and discredit another part of that same witness' testimony. Simply put, this was a jury case. The case went to the jury and the jury convicted.

The complainant testified that he was in fear of imminent serious bodily injury and that he was threatened and that the appellant was in a position to carry out his threats against the complainant.

Kathy Gerbig, the wife of the complainant, knew very little about the situation. She had exited her truck and had gone into the convenience store to prepay for the gasoline.

Charles Lee Hadnot, the appellant, took the stand. He testified that he lived at 2553 Highway 190 East, Woodville. He owned his own place there. He had known the complainant for about 15 years. Hadnot claimed that he and the complainant were "ex-beer drinking buddies". Hadnot agreed that he pulled up at the gas pump and that Mike, the complainant, was pumping gas. The appellant also agreed that Gerbig spoke first. Then, the appellant admitted from the stand that he said this: "What is up, chicken s---, Mike."

Apparently the appellant took the position that this was not an entirely inappropriate greeting. Mike still continued to fill his car with unleaded regular gasoline. The appellant's wife got out of the car to go pay for the appellant's gas. Appellant states he then left the filling station and the convenience store. Then after a while the cops located appellant and said that charges had been filed against the appellant. The appellant's basic position is that he simply did not threaten Mike Gerbig. The appellant claimed that Mike had been drinking. The appellant said that he drove off right away having pumped only three dollars worth of premium gas. The appellant took the position that the problems between the two arose because the appellant had actually never hunted on the 160 acres but that Mike had unjustly accused the uncle of the appellant of stealing the marijuana plants off the 160 acres.

The complainant also stated that the appellant made an obscene gesture with his finger but the appellant responded that he had heavily tinted windows in his car and that an individual could not see inside of his car.

■ The record contains sufficient evidence to support each essential element of the offense charged beyond a reasonable doubt. The State conceded in its brief that the specific intent of the appellant is an essential element of the offense of terroristic threat. *See* TEX.PENAL CODE § 22.07(a)(2). Obviously the State is not required to have and to prove an actual admission by a defendant made and spoken by the defendant admitting his own specific intent before the appellant could be constitutionally convicted in such a case as this. The requisite intent can be inferred from the acts, the words, and the conduct of an accused. *See and compare Beltran v. State,* 593 S.W.2d 688 (Tex.Crim. App.1980). Also the desired and sought after reaction of the listener (or of the com-

plainant) regardless of whether the threat is real or whether the threat is carried out, constitutes some evidence of the intent of the protagonist. *See and compare Jarrell v. State,* 537 S.W.2d 255 (Tex.Crim.App.1976).

Gerbig testified that he was in fear of imminent serious bodily injury and that he felt that it was the appellant's intention to so place him. Mrs. Gerbig testified that her husband was very scared and was physically shaken. Thus, there is cogent evidence that the appellant, at least according to the State's case, had attained his goal. Appellant had, according to Mrs. Gerbig, placed her husband in fear of imminent serious bodily injury—which was the appellant's intent. This fear was a result of the appellant's words, gestures, and conduct. We overrule point of error number two.

■ Point of error number three of the appellant argues that the trial court's charge of the jury was fundamentally defective. The appellant correctly argues that in order for an accused to commit the offense of terroristic threat, the accused must have a specific "intent to place any person in fear of imminent serious bodily injury." TEX.PENAL CODE § 22.07(a)(2). The argument of the appellant here is that in the charge of the court to the jury, the judge instructed upon the definition of intentionally and knowingly but also instructed upon the definition of recklessly. However, in the application of the facts to the law paragraph, the court only charged on "intentionally and knowingly" threatened to commit an offense involving violence to James M. Gerbig, namely assault with intent to cause James M. Gerbig to be placed in fear of imminent serious bodily injury as alleged in the information.

The term recklessly was simply not used in the application paragraph. We find no error and we find nothing in the charge that was calculated to injure any of the rights of the appellant. There is no showing that the appellant failed to receive a fair trial and an impartial trial.

The appellant, along with his appellate lawyer, with commendable candor and excellent briefing concedes that the appellant did not object to the jury charge at the time of trial. Appellant concedes and admits that any error therefore as to the charge must be so egregious and creates such harm to the extent that the appellant was denied a fair trial and an impartial trial. Also, the appellant's brief clearly agrees that the culpable, mental state of recklessness was not used in the crucial part of the charge—the application paragraph—where the application paragraph applied the facts to the law of the case. No harm occurred; certainly no egregious harm took place.

■ Therefore, on appellate review the entire record is to be analyzed. The defendant says that the State repeatedly and monotonously insisted on a misstatement of the law in that the entire trial focused on Mr. Gerbig's point of view (that is, whether Gerbig was put in fear of serious bodily injury or not) and, therefore, a reasonable juror or a reasonable jury could easily and properly conclude that even if the appellant did not intend to cause Mr. Gerbig to fear imminent serious bodily injury with his words, that the appellant might have recklessly caused that fear because of the included definition of recklessness in the first part of the jury's charge. Therefore, actual harm was claimed by appellant and that harm was so egregious as to deny the appellant a fair and impartial trial. Appellant argues that he was found guilty under an incorrect statement of the law and without due process. Appellant cites *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1985). *Almanza* is heeded by us and followed. As we understand *Almanza,* the alleged mistake, if any, was not egregious. We overrule point of error number three.

When the appellant took the stand, his basic position was that he had not seen Kathy Gerbig. It was about 7:00 a.m. or a little later on July 4th and that Mike was pumping gas. Mike had his shirt off and Mike was drunk. The appellant had seen Mike drunk before on more than 20 or 25 occasions.

Rebecca Renea Hafford testified briefly. She stated that she was the wife of Mr. Hadnot. She stated that she went in to pay for the premium gas and that her husband was pumping gas from a separate and different pump. She saw Mr. Gerbig. He had his

shirt off and he acted like he was drunk. She stated that Charles Hadnot did not threaten James Gerbig and that her husband made no obscene gestures toward Gerbig— like the use of a finger or something like that. Ms. Hafford did state that the only thing that her husband said was: "Hey, old chicken s--- a-- Mike." She said that that was the end of it.

Alma Jean Mitchell Hadnot took the stand for the defense. She was the mother of Charles Hadnot, the appellant. She testified briefly. She testified that she had not heard her son make any sort of threat or any promise to harm or hurt James Gerbig. She stated that the appellant and the complainant were friends and that they had been friends for something like eight or nine years, being "beer drinking buddies".

On rebuttal, Mike and Kathy denied that Mike was drinking. They had a thermos of coffee in their truck. Each denied that Mike had been a drinking buddy of the appellant. Even after the case had been closed and rested by both parties, the appellant made a motion to reopen his defense and the careful, prudent, and fair-minded trial judge permitted the defense to reopen.

Ms. Robbie Ford was called to the stand. Ms. Ford was the aunt of appellant. Ms. Ford also knew James Gerbig. She testified that they were formerly "beer drinking buddies". She stated that she did remember an incident when her husband was hunting and her husband walked across some marijuana plants. There was an objection on the basis of hearsay which was sustained and the jury was properly instructed to disregard the hearsay statement.

After the second time the case was closed and rested by the defense, we can find no objections to the charge. At the time of the first closing of the case, the State replied that it had no objection to the charge. The defense did not object, but the appellant wanted to bring forward a late arriving, non-subpoenaed witness, being Ms. Robbie Ford. In the entire record we do not find that any objections or exceptions were levelled against the court's charge by the defense. We have determined that there is no fundamental er-

ror. Appellant, under this record, received a fair trial and impartial trial.

 The appellant's last and fourth point is that the conduct of the trial counsel denied the appellant the effective assistance of counsel. Again, the appellant concedes in his brief that the convicted defendant must show that trial counsel's performance was deficient in that counsel at trial made such serious errors that he was not functioning effectively and that the deficient performance prejudiced the defendant to such a great degree that the defendant was deprived of a fair trial. Of course, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable, professional judgment. *See and compare Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The accused must show a reasonable probability that but for the counsel's unprofessional conduct and unprofessional errors, that the result of the proceeding would have been different. Appellant has failed to do so.

Appellant argues this: Trial counsel failed to object to the prosecutor's repeated misstatement of the law and that trial counsel failed to object to a jury charge which included a definition of a lesser culpable mental state than required by the offense. It can be gleaned from the record that at trial the counsel's defense and strategy was simply that the *appellant never made any threats toward the complainant and that their encounter or confrontation simply did not happen in the manner that the State's witnesses testified to.* It is easily conceivable that from the standpoint of the defense's evidence, that trial counsel might well have taken the strategic position that the greeting, although unusual, was one that was not entirely inappropriate among old "beer drinking buddies". And that certainly, in any event, it was not a threat and it was not intended as a threat.

Appellant has failed to prove by a preponderance of the evidence that the trial counsel provided ineffective assistance. Under the entirety of the record, we conclude that there is a lack of showing that trial counsel's conduct was so deficient and so inadequate as to undermine the proper functions of the adver-

sarial process to the extent that the trial could not be relied upon as having produced a just and fair result. *See Butler v. State,* 716 S.W.2d 48 (Tex.Crim.App.1986). We overrule point of error number four. We affirm the judgment and the sentence below.

AFFIRMED.