79 S.W.3d 619 (2002)
In the Matter of C.S., a Child.
No. 06-01-00119-CV.
Court of Appeals of Texas, Texarkana.
Submitted April 11, 2002.
Decided May 24, 2002.
*620 James R. Hagan, Longview, for appellant.
Andy Porter, Assistant District Attorney, Longview, for appellee.
Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION
Opinion by Chief Justice CORNELIUS.
The County Court at Law of Gregg County, sitting as a juvenile court, conducted an adjudication hearing on a charge that C.S., a minor, engaged in delinquent conduct by making a terroristic threat. A jury found that C.S. committed the act, and the court, in a disposition hearing, placed C.S. on one year's probation. See Tex. Fam.Code Ann. § 54.03 (Vernon Supp. 2002); Tex. Pen.Code Ann. § 22.07 (Vernon 1994).
The evidence is undisputed. C.S., who was twelve years old at the time and a student at Foster Middle School, was brought to his school principal's office because of misbehavior, and he was facing *621 reassignment to an on-campus suspension at the school as punishment. C.S., in the presence of the principal's receptionist, the school attendance clerk, and two other adults, became very angry and upset. He denied committing the misbehavior, said that it was not his fault, and that he was being persecuted by his teacher. The principal's receptionist, Marsha Parker, described C.S. as sullen and angry. C.S. did not want to be sent to on-campus suspension again. Then he said, "I'm going to blow up the school." Lavell Bridges, the school attendance clerk, asked C.S. what was wrong. C.S. then said, "I said I was going to blow up the school." Bridges said, "You can't say that." Then C.S. said, "Well, I said I was going to blow up the school." Bridges then left the office. Parker, the receptionist, then took C.S. into the principal's office and asked him to repeat for the principal what he had said. Initially, C.S. refused. Then the principal, Connie Isabell, came over and stood in front of C.S. and asked him to repeat what he had said. C.S. repeated to the principal, Isabell, what he had said to Parker. Parker then left the principal's office. The police were called to the school, and Officer Ivory, the school resource officer, took C.S. into custody.
The petition charged that C.S. engaged in delinquent conduct and committed a terroristic threat under Section 22.07 of the Texas Penal Code by threatening to commit an offense involving violence to property, namely arson, with intent to interrupt or prevent the use or occupation of a building.[1]
C.S. raises two issues on appeal: (1) the court erred by giving the jury a definition of "reasonable doubt," and (2) the evidence is legally and factually insufficient to prove that by his statement he intended to interrupt or prevent the use or occupancy of the school.
In Paulson v. State, 28 S.W.3d 570 (Tex. Crim.App.2000), the Texas Court of Criminal Appeals specifically overruled the portion of Geesa v. State[2] that required trial courts to define reasonable doubt for the jury and found that the better practice was to give the jury no definition or explanation of the term.
C.S. objected to the inclusion of the Geesa-approved definition in the jury charge. The trial court overruled the objection. The State argues that C.S. has waived any error in this regard because at voir dire the court read, without objection, a substantial part of the definition to the jury panel as part of her explanation of how they should apply the concept of reasonable doubt in the trial. The State argues that this explanation to the jury, at voir dire without objection, is tantamount to an agreement of counsel to include the definition in the charge. We disagree. We conclude that C.S. could not have anticipated that the court's brief discussion of the requirement of proof beyond a reasonable doubt would necessarily mean that the court would later include the formal definition in the jury charge. We find that C.S. has adequately preserved the claimed error for review.
We find that the court erred in including the reasonable doubt definition in the jury charge. Finding error in the court's charge, however, merely begins our inquiry. Almanza v. State, 686 S.W.2d *622 157, 174 (Tex.Crim.App.1984) (op. on reh'g). We must now determine whether the error was so harmful that it requires reversal. Id. at 171. C.S. raised a proper objection at trial, so reversal is required if the error was calculated to injure him. Id.; Aguilar v. State, 914 S.W.2d 649, 651 (Tex.App.-Texarkana 1996, no pet.). The presence of any harm, regardless of degree, is sufficient to require reversal. Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim.App.1994). C.S. has the burden to persuade us that he suffered some actual harm as a consequence of the charging error. Id.; see also Belyeu v. State, 791 S.W.2d 66, 75 (Tex.Crim.App.1989); LaPoint v. State, 750 S.W.2d 180, 191 (Tex. Crim.App.1986) (op. on reh'g); Gornick v. State, 947 S.W.2d 678, 681 (Tex.App.-Texarkana 1997, no pet.).
The majority in Paulson v. State, 28 S.W.3d 570, rejected the reasonable doubt definition for several reasons. It concluded that the definition was repetitious, logically infirm, and if followed literally, would cause a jury to never convict anyone. From this, it is obvious that the majority believed the definition favored the defendant because, if the jurors properly applied it, they would be less likely to convict. In a concurring opinion, Judge Holland concluded that the definition should not be given and similarly reasoned that its wording "could confuse jurors into applying a reduced burden of proof on the State to prove its case." Id. at 576. Thus, seven judges of the Texas Court of Criminal Appeals agreed that the definition favored the defendant over the state. For the same reasons, and in the complete absence of any explicit suggestion by C.S. as to how the definition harmed him, we conclude that the error was not harmful, and so reversal is not appropriate.
C.S. next contends that the evidence is factually and legally insufficient to support the jury's verdict that he made a terroristic threat. Our review of the sufficiency of evidence in an adjudication of delinquency is based on the standards applicable to sufficiency of the evidence challenges in criminal cases. See Tex. Fam. Code Ann. § 54.03(f); see also In re L.M., 993 S.W.2d 276, 284 (Tex.App.-Austin 1999, pet. denied); In re E.P., 963 S.W.2d 191, 193 (Tex.App.-Austin 1998, no pet.). In our review of the legal sufficiency of the evidence, we employ the standards set forth in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). A factual sufficiency review requires us to view the evidence in a neutral light, favoring neither party. Id.; see Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). We view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State, 23 S.W.3d at 7; Clewis v. State, 922 S.W.2d at 129.
The evidence shows that, in the midst of his complaining about how unfair the teachers were and how he was mistreated, C.S. said to the principal's receptionist, "I'm going to blow up the school." The receptionist testified that she was concerned because of the "trend of violence in schools in our society" and that this statement was not something she had ever heard during her two years at the school. She testified that four other adults were present when C.S. made the threat. C.S. repeated his statement to the attendance clerk.
*623 The receptionist testified that she then took C.S. into the principal's office and asked him to repeat to the principal what he had said. C.S. initially refused the request. The principal then stood in front of C.S. and asked him to repeat his statement. C.S. repeated the threat. The principal testified that C.S. was upset and angry when he repeated the statement in front of her, and that based on C.S.'s background, she perceived the statement to be a threat. The police were called, and C.S. was placed in the custody of the school officer.
C.S. contends that the evidence is legally and factually insufficient to show that he made the statement with the intent that is required by the Texas Penal Code. The State charged C.S. with violating Tex. Pen. Code Ann. § 22.07, which provides in relevant part:
(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
...
(3) prevent or interrupt the occupation or use of a building; room; place of assembly; ... or other public place;....
This subdivision of the statute has not been construed by any appellate decision we have found. In cases involving other subdivisions of this statute, the courts have held that the requisite intent may be inferred from the acts, words, or conduct of the accused. Dues v. State, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982). It is immaterial whether the accused had the capability or the intention to actually carry out his threat. Id.; In re A.C., 48 S.W.3d 899, 904 (Tex.App.-Fort Worth 2001, pet. denied); Cook v. State, 940 S.W.2d 344, 347 (Tex.App.-Amarillo 1997, pet. ref'd). The statute does not require that the intended victim or anyone else actually believe that the accused will carry out the threat, or that they be placed in fear that the threat may be carried out, or that their use or occupation of a building actually be interrupted or prevented. Dues v. State, 634 S.W.2d at 305. The offense is complete if the accused, by his threat, sought as a desired reaction to prevent or interrupt the occupation or use of a building, room, or place of assembly.
The specific intent of the accused is an essential element of the offense of terroristic threat. See Tex. Pen.Code Ann. § 22.07(a)(2) (Vernon 1994). An actual admission by the accused of his specific intent is not required, but the requisite intent may be inferred from the acts, words, and conduct of the accused. Beltran v. State, 593 S.W.2d 688 (Tex.Crim. App.1980). The desired reaction of the listener (or of the complainant), regardless of whether the threat is real or whether the threat is carried out, may also constitute some evidence of the intent of the person making the statement. Jarrell v. State, 537 S.W.2d 255 (Tex.Crim.App. 1976); Hadnot v. State, 884 S.W.2d 922, 925-26 (Tex.App.-Beaumont 1994, no pet.).
Our review of the sufficiency of the evidence to prove C.S.'s intent is complicated by C.S.'s age. Texas courts have found it appropriate to consider the age of a juvenile in determining whether the juvenile was in custody; that is, whether, based on the objective circumstances, a reasonable child of the same age would believe his freedom of movement was significantly restricted. Jeffley v. State, 38 S.W.3d 847, 855 (Tex.App.-Houston [14th Dist.] 2001, no pet.); In re L.M., 993 S.W.2d 276, 289 (Tex. App.-Austin 1999, pet. denied).[3] *624 Similarly, we find it appropriate to consider C.S.'s age in our review of his statements and in determining the sufficiency of the evidence to prove the intent necessary to satisfy the requirements of the statute.
As is typical, there is no direct evidence here of C.S.'s intent. We must therefore determine the sufficiency of the evidence of his intent from the inferences that may properly be drawn from his words and from the circumstances surrounding their utterance. It is clear from this evidence that C.S. made the statement while angry. It is also clear that he did not have the ability to immediately carry out his threat to blow up the school. But that is not required under the statute. The gravamen of the offense is the intention to interrupt or prevent the use or occupancy of the school by uttering the threat. If C.S. really intended to blow up the school at some future time, he undoubtedly would have kept his intention a secret, lest his plan become known and might be frustrated. The fact that he was angry and did not want to be placed in on-campus suspension indicates that he made the statement, not intending to actually do the act, but in order to scare the school officials who heard it and disrupt or interrupt their use of the school facilities, thereby frustrating their plan to immediately place him in on-campus suspension again.
The principal testified that she believed C.S.'s statement was a threat, that she was worried by it, and that based on C.S.'s background, it could have been a threat. The receptionist testified that she was concerned by the statement because it was not the type of statement she had ever heard from a student and because of the general trend toward violence in schools. That is the exact kind of threat the statute is designed to punish. Again, we must remember that it is not necessary that the threat have the desired effect on the hearers; it is only necessary that the threat be made with the intent that it have that effect.
The task of divining C.S.'s intent in making the threat was for the jury. Considering the undisputed evidence in this case, the jury could have reasonably believed that, in order to frustrate and delay his punishment of being placed in on-campus suspension, C.S. made the threat with the intent to cause the school officials to react in a way that would interrupt or prevent their use of the school facilities. In fact, although it is not a necessary element of this offense, the work of the school's attendance officer, principal's receptionist, principal, and the school resource officer was interrupted and disrupted as a result of C.S.'s statement.
The judgment is affirmed.
Concurring Opinion by Justice ROSS.
ROSS, Justice, concurring.
Generally, we presume a jury follows the trial court's instructions. Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998). During voir dire, the trial judge gave the jury panel the Geesa definition of "reasonable doubt." Neither party objected. To preserve a complaint for appellate review, a party must present a timely, specific objection at trial. Tex.R.App. P. 33.1(a); see Martinez v. State, 22 S.W.3d 504, 507 (Tex.Crim.App.2000); Etheridge v. State, 903 S.W.2d 1, 14 (Tex.Crim.App. 1994); Little v. State, 758 S.W.2d 551, 563 (Tex.Crim.App.1988); Granviel v. State, 552 S.W.2d 107, 121 (Tex.Crim.App.1976). To preserve error, a party must object at the first opportunity. Carmona v. State, 698 S.W.2d 100, 105 (Tex.Crim.App.1985).
*625 In Paulson, the Texas Court of Criminal Appeals overruled the portion of Geesa requiring the trial court to define reasonable doubt for the jury. Paulson v. State, 28 S.W.3d 570, 573 (Tex.Crim.App.2000). If it is error for the trial court to give the definition in the jury charge, and if we presume juries follow the court's instructions, then it is error for the trial judge to give the definition at voir dire. It makes little sense to permit the trial court to get around Paulson by moving the definition out of the charge and into voir dire. C.S. should have objected to the trial court's giving of the Geesa definition during voir dire. By failing to timely object, C.S. has failed to preserve this point for appeal.
NOTES
[1] The petition also alleged that property damage, personal injury, or property loss resulted. There was no proof to that effect, the jury was not charged on that question, and no restitution was awarded.
[2] Geesa v. State, 820 S.W.2d 154 (Tex.Crim. App.1991).
[3] At common law, children under seven were considered incapable of possessing criminal intent. Beyond that age, they were subjected to arrest, trial, and in theory, to punishment like adult offenders. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).