**In the Interest of C.G.M., II, Appellant,**

v.

**JUVENILE OFFICER, Respondent.**

**No. WD 68865.**

Missouri Court of Appeals,
Western District.

June 10, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 29, 2008.

Steven E. Skinner, Maryville, MO, for Appellant.

David A. Baird, Maryville, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., PAUL M. SPINDEN, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Presiding Judge.

C.G.M., II, appeals the circuit court's judgment finding that he was in need of the care and treatment of the Juvenile Court because he had committed an act, which if committed by an adult, would have constituted the class A misdemeanor of making a terroristic threat in violation of section 574.115.1(4), RSMo Cum.Supp. 2007. C.G.M. asserts that insufficient evidence existed to establish that he made a threat to cause an incident involving danger to human life or that he acted with criminal negligence with regard to the risk of causing the evacuation of a building. We reverse the circuit court's judgment.

C.G.M. was born on December 25, 1993, and was almost 13 years old at the time of the alleged incident. C.G.M. is a student at Jefferson C–123. In December 2006, C.G.M. told a classmate, A.R., in the school hallway that "he may get dynamite from his dad for his birthday" and asked A.R. if he "wanted to help him blow up the school." A.R. testified that he did not believe that C.G.M. would receive dynamite from his father for his birthday and that he did not believe that C.G.M. was going to blow up the school. Four or five months after C.G.M. asked him if he wanted to help him blow up the school, A.R. told a teacher about what C.G.M. said.

The teacher reported the incident to the school principal, Tim Jermain, on May 1, 2007. As a result of the incident, C.G.M. was suspended from school. Jermain said that, at the time that he heard of the alleged threat, he did not believe that an immediate danger existed to the school because the alleged threat was made around Christmas time. Jermain said that he did not consider closing, quarantining, or evacuating any portion of the school. Jermain also said that, if a student had reported the same information to him in December before Christmas,[1] he would not have evacuated the school at that time because the student would not have had dynamite in his possession until Christmas.

1. Although C.G.M. told his classmate that his dad was going to give him dynamite for his birthday, C.G.M.'s birthday was on Christmas day.

He also said that "if there's no statement that [the student has] dynamite in [his] possession, we would not evacuate the school[.]"

A juvenile officer interviewed C.G.M., and C.G.M. admitted making the alleged threat. On May 4, 2007, a juvenile officer for Nodaway County filed a petition with the circuit court seeking a determination that C.G.M. was in need of the care and treatment of the Juvenile Court. The juvenile officer, thereafter, filed a first amended petition on May 23, 2007, and a second amended petition on July 11, 2007. In the second amended petition the juvenile officer alleged:

> Pursuant to Section 211.031.1(3) RSMo., said juvenile is in need of the care and treatment of this Court in that around Christmas, 2006, the juvenile committed acts which if committed by an adult would constitute the class D felony and/or the class A misdemeanor of making a terroristic threat in violation of Section 574.115, RSMo., in that the juvenile knowingly communicated to [A.R.] a threat to cause the destruction of his school by blowing up the school, an incident involving danger to life, including by stating or implying that he was going to blow up the school, that he was going to do so by the use of dynamite and/or he wanted [A.R.] to assist him in blowing up the school and the juvenile did so with reckless disregard of the risk of causing the evacuation, quarantine or closure of any portion of the Jefferson C–123 School building, an inhabitable structure, and/or the juvenile did so with criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of any portion of the Jefferson C–123 School Building, an inhabitable structure.

On August 17, 2007, the circuit court held an adjudication hearing and a disposi-tional hearing. At the close of the adjudication hearing, the circuit court stated on the record that it found that the juvenile office had met its burden pursuant to section 574.115(4) and that the action was done with criminal negligence with regard to the risk of causing the evacuation, quarantine, or closure of the building. The circuit court then said:

> I had a little bit in my mind, how silly is this? The more I listened to the evidence and looked at the statute, though, what this is causing is for each of us to be careful about what we speak and say.
>
> A reasonable consequence of this action, at the time it was made it could have been that it could have been reported and if it was reported to the school, there was a good chance the building could be closed. That all falls through there. As far as the argument that it was preposterous that—as to not be believed on that, I might have swallowed that until it came to the point that we have young [A.R.], in May, is still praying [sic] on his mind enough that he goes up to talk to a teacher about that. Now I can't get in his mind and say what he's thinking or why he's thinking this, but at least it stayed enough to get reported and looked into.
>
> Gone are the days of hanging around airport terminals and joking about bombs. Gone are the days that you think it's funny somebody might have a bomb in their shoe. Our society has changed; that's why the statutes were adopted. That is why the legislature put the varies [sic] levels. That's why I'm going to find a violation.

On August 23, 2007, the circuit court issued its Findings of Fact and Conclusions of Law and its Judgment of Disposition Regarding Delinquency/Status. In its Findings of Fact and Conclusions of Law the circuit court found the allegations to be

true "beyond a reasonable doubt and that the juvenile comes within the provisions of the Juvenile Code," and the court assumed jurisdiction over the juvenile pursuant to section 211.031.1(3), RSMo Cum.Supp. 2007. In its Judgment of Disposition, the circuit court continued legal and physical custody of C.G.M. with his parents "subject to supervision by the juvenile officer under standard conditions of probation." The court also ordered C.G.M. to participate in therapy/counseling and to follow the recommendations of all mental health care providers. C.G.M. appeals.

■ In his only point on appeal, C.G.M. asserts that insufficient evidence existed to establish that he made a threat to cause an incident involving danger to human life or that he acted with criminal negligence with regard to the risk of causing the evacuation of a building. We agree.

■ "We review juvenile proceedings in the same manner as other court-tried cases." *In the Interest of C.L.B.*, 22 S.W.3d 233, 235–36 (Mo.App.2000). We will not reverse the circuit court's judgment on appeal unless it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Id.* at 236. In determining the sufficiency of evidence, we view the evidence and reasonable inferences in the light most favorable to the verdict and ignore all evidence and inferences to the contrary. *Id.* Moreover, in juvenile proceedings, "due process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult." *In the Interest of J.L.P.*, 600 S.W.2d 47, 50 (Mo.App.1980); *see also C.L.B.*, 22 S.W.3d at 236.

An individual commits the crime of making a terroristic threat if:

[S]uch person communicates a threat to cause an incident or condition involving danger to life, communicates a knowingly false report of an incident or condition involving danger to life, or knowingly causes a false belief or fear that an incident has occurred or that a condition exists involving danger to life:

. . . .

(4) With criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation.

§ 574.115.1(4). Section 562.016.5, RSMo 2000, says that a person acts with criminal negligence "when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." To be guilty of making a terroristic threat, the juvenile office, therefore, had to establish that C.G.M. communicated a threat to cause an incident involving danger to life and failed to be aware of a substantial and unjustifiable risk that his statement would cause an evacuation or closure of the school.

■ The parties do not dispute that C.G.M. told A.R. that he *may receive* dynamite from his father for his birthday and that C.G.M. inquired of A.R. whether he wanted to help blow up the school. It is only the conclusion to be drawn from the facts that is disputed. Accordingly, the circuit court had an issue of law to resolve—whether, based on these facts, the law will regard C.G.M.'s statement as a communication of a threat to cause an incident involving danger to life. *See Hobbs v. Boy Scouts of Am., Inc.*, 152 S.W.3d 367, 370 (Mo.App.2004), *cert. denied*, 546 U.S. 833, 126 S.Ct. 58, 163 L.Ed.2d 87 (2005). We review such questions of law de novo. *In the Interest of W.B.*, 162 S.W.3d 517, 522 (Mo.App.2005).

■ "[T]rue threats ... encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals[.]" *Virginia v. Black*, 538 U.S. 343, 344, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). We question whether C.G.M.'s inquiring of A.R. whether A.R. wanted to help blow up the school *if* C.G.M. got dynamite for his birthday constitutes an expression of C.G.M.'s intent to cause an incident involving danger to human life. Moreover, a statement that a juvenile would be receiving dynamite from his parent for his birthday alone makes the listener question whether the speaker is making a serious expression to cause an incident involving danger to life. Indeed, A.R. testified that he did not believe that C.G.M. would receive dynamite for his birthday and that he was not in fear that C.G.M. was going to blow up the school. Although section 574.115.1(4) does not require the listener to believe that the accused will carry out the threat or to be placed in fear that the threat will be carried out, the desired reaction of the listener may constitute some evidence of the intent of the person making the statement. *See In re C.S.*, 79 S.W.3d 619, 623 (Tx.App.2002).[2] Further, unlike what the juvenile officer in this case asserts, C.G.M. did not state that "he was going to blow up his school." C.G.M. did not make such a declaratory statement. He inquired whether his classmate wanted to help him blow up the school, *if* C.G.M. received dynamite for his birthday.

Moreover, the evidence did not establish that C.G.M.'s alleged threat would have caused a substantial and unjustifiable risk of an evacuation or closure of the school. The school principal testified that he not only never considered ordering any type of evacuation or closure of the school when he learned of C.G.M.'s alleged threat in May 2007, he also stated that he would not have ordered the evacuation or closure of the school in December 2006 if a student had reported the same information to him in December before Christmas. Jermain said that the school would take steps to evacuate the school in response to a threat, "if [the school] felt like it was a specific threat, that there were specific details and the students were in immediate danger[.]" He said that if a student had no dynamite in his possession, he would not have evacuated the building. Although actual evacuation or closure of the school is not required by section 574.115.1(4), the fact that the school principal opined that he would not have evacuated the school even if he had known of such a statement in December is pertinent to the determination of whether a substantial and unjustifiable risk of evacuation existed. Given this evidence, we fail to see how a fact finder could determine beyond a reasonable doubt that a substantial and unjustifiable risk of an evacuation or closure of the school existed or that C.G.M.'s lack of awareness of the risk constituted a gross deviation from reasonable care.

In so ruling, we want to caution C.G.M. that he came very close to crossing the

2. In *C.S.*, the student, who was 12 years old and in middle school, said multiple times in front of school officials that he was going to blow up the school. *C.S.*, 79 S.W.3d at 620–21. The Texas Court of Appeals found that the student committed a terroristic threat in violation of section 22.07 of the Texas Penal Code. *Id.* at 624. The court concluded:

The fact that [the student] was angry and did not want to be placed in on-campus suspension indicates that he made the statement, not intending to actually do the act, but in order to scare the school officials who heard it and disrupt or interrupt their use of the school facilities, thereby frustrating their plan to immediately place him in on-campus suspension again.

*Id.*

line. We whole heartedly agree with the circuit court that our society has changed and that "[g]one are the days of hanging around airport terminals and joking about bombs" and "gone are the days that you think it's funny somebody might have a bomb in their shoe[.]" Commenting to a classmate that he may get dynamite from his father for his birthday and asking the classmate if he wants to help blow up the school is not a matter that schools, courts, or society should take lightly. However, given the circumstances in this case, we do not believe that the evidence established proof beyond a reasonable doubt that C.G.M. committed the crime of making a terroristic threat and, therefore, conclude that C.G.M. was not in need of the care and treatment of the Juvenile Court.

We, therefore, reverse the circuit court's judgment and remand for the circuit court to release C.G.M. from the jurisdiction of the Juvenile Court.

All concur.