

# NUMBER 13-10-00357-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

**DEREK JAY MENDENHALL,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

**On appeal from County Court at Law No. 1
of Victoria County, Texas**

_____

# MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes
Memorandum Opinion by Justice Perkes**

A jury convicted appellant, Derek Jay Mendenhall, of the offense of terroristic threat, a Class B Misdemeanor. *See* TEX. PENAL CODE ANN. § 22.07(a)(2), (c) (West Supp. 2010). The jury assessed punishment at ninety days in the county jail, suspended for a period of community supervision, and a $1,000 fine. The trial court imposed a two-year period of

community supervision. In a single issue, appellant contends the evidence is legally insufficient to support his conviction. We affirm.

## I. BACKGROUND

### A. State's Evidence

Krystin Nicole Williams (Nicole) and appellant ended their relationship on April 18, 2009, the date of the incident in question. On that day, he sent her a text message, which stated:

> You got 20 minutes to get over here and get all your s*** or it's going in the trash and I mean every bit of it. And don't bring anybody with you. Come by yourself so we can talk. But I'm serious about–I'm serious. About to throw all this s*** away and I don't give a f*** if your mom sees us or not. You want this s*** come get it because I know your lying a** was never serious." [Expletives omitted].

In reply, she sent him a text, stating she would come over and pick up her things. When she and her father, Jeffrey Williams, (the complainant) arrived at appellant's residence, she saw appellant pull out a nine-millimeter gun. He cocked it, pointed it towards their heads, and said, "I told you to come alone." Nicole testified she was in fear for her life when he pointed the gun at her. She drove around the corner, and her father called the police. They waited there until the police arrived.

Williams testified that when he and Nicole pulled up to appellant's residence, appellant had a gun in his hand, which had a red laser light to aim it. Williams felt threatened and feared for Nicole's life when appellant pointed the gun in their direction. Williams stated he had never threatened appellant in the past, nor did he threaten him during the incident in question.

When Lieutenant Jason Cross arrived at the scene, appellant told him Nicole's father had pointed a gun at him in the past. He also told Lt. Cross that during the incident

2

in question, Williams was "talking mess" to him and told him to "get away from my truck, or I'll kill you." Appellant pulled out the gun and told Nicole and Williams to leave. Appellant told Lt. Cross the gun was empty and that he pointed it to the grass, not at Nicole and Williams. Lt. Cross retrieved the gun and a gun case, which contained three magazines that were not loaded on the gun. He did not see a laser light on the gun or in the case.

On cross-examination, Lt. Cross testified that under the Castle Doctrine,[1] it was not reasonable to pull a gun on someone who is only "talking mess." He stated it did not make sense for appellant to keep the gun empty or point it only at the grass if he was afraid of Williams.

### B. Appellant's Evidence

Appellant's father, Doug Mendenhall, testified that during the incident in question, he saw Williams attempting to get out of the vehicle, point his finger at appellant, and yell something at appellant. After Nicole drove away from the residence, Mendenhall took the gun from appellant. Mendenhall testified the gun had no clip or bullets in it and that appellant told him that he was trying to scare Williams in order to keep him away from appellant. Mendenhall said that appellant told him Nicole wanted her belongings, which were in the back of the truck. Mendenhall grabbed a t-shirt from the back of the truck, and when he took it to where Nicole and Williams were parked, Williams got out of the vehicle and told him that "he was going to kill that little m**–f** bastard." (expletive omitted). Mendenhall replied that in order to get to appellant, Williams would have to go through him first.

Appellant did not testify during the guilt-innocence phase of his trial.

---

[1] Lt. Cross testified that under the Castle Doctrine in Texas, a property owner can protect your property or your person with any amount of force up to and including deadly force if needed.

3

## II. STANDARD OF REVIEW

When reviewing legal sufficiency, a court must ask itself whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt—not whether *it* believes the evidence establishes the verdict beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). The jury is the sole judge of a witness's credibility and the weight to be given the testimony. *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The reviewing court should not act as a thirteenth juror that substitutes its own opinion of the credibility and weight of the evidence for that of the fact finder. *See Brooks v. State,* 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (plurality op). Instead, the reviewing court must resolve inconsistencies in testimony in favor of the verdict and then ask whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). The jury may choose to believe or disbelieve any part of a witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Kuciemba v. State,* 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). A fact-finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact-finder to decide which inference is most reasonable. *Laster v. State,* 275 S.W.3d 512, 523 (Tex. Crim. App. 2009).

4

## III. ANALYSIS

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits the offense of terroristic threat if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury. TEX. PEN. CODE ANN. § 22.07(a) (2); *Dues v. State*, 634 S.W.2d 304, 305–06 (Tex. Crim. App. 1982); *Kingsbury v. State*, 14 S.W.3d 405, 408 (Tex. App.—Waco 2000, no pet.). A person acts with intent with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2003). Intent can be inferred from the acts, words, and conduct of the accused. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980). However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be completed it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury. *Jarrell v. State*, 537 S.W.2d 255, 256–257 (Tex. Crim. App. 1976). Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. *Id.* However, the desired and sought after reaction of the complainant, regardless of whether the threat is real or whether

5

the threat is carried out, constitutes some evidence of the intent of the protagonist. *Hadnot v. State*, 884 S.W.2d 922, 925–26 (Tex. App.—Beaumont 1994, no pet.). A threatened injury is "imminent" if it is "near at hand" or "on the verge of happening." *Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim. App. 1989).

Here, Nicole went to appellant's residence as a result of his invitation and threat. She was in fear of losing her personal belongings if she did not retrieve them. When Nicole and Williams drove up to the driveway of appellant's residence, appellant was already standing in the driveway with a gun tucked behind his back. No evidence exists that appellant knew Williams was accompanying Nicole that evening.

Considering the evidence in the light most favorable to the verdict, it can be inferred through the appellant's actions and conduct that his intent was to place Williams in fear of imminent bodily injury. Further, Mendenhall's testimony corroborates this when he testified appellant told him that he used the gun to scare Williams to keep him off of the appellant. We conclude the evidence proves beyond a reasonable doubt that appellant committed the crime of terroristic threat for which the jury found him guilty. We overrule the sole issue for review.

## IV. Conclusion

We affirm the trial court's judgment.

_____
GREGORY T. PERKES
Justice

Do not publish. Tex. R. App. P. 47.2(b).

Delivered and filed the
29th day of September, 2011.