

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00115-CV

IN THE MATTER OF R.D.

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-101033-14

----------

## OPINION

----------

## I. INTRODUCTION

R.D., a juvenile, appeals an order of adjudication and disposition in which R.D. was found to have engaged in delinquent conduct and placed on probation for one year. Among other findings, the trial court found that R.D. had committed the offense of exhibition of a firearm on school property by threat. In one point, R.D. argues the evidence is insufficient to support the trial court's exhibition-of-a-firearm finding. We will affirm.

## II. BACKGROUND

Darryl Brown, a teacher for the Fort Worth Independent School District, testified at the adjudication hearing that on October 16, 2014, he was serving as an on-campus intervention teacher, supervising students "who have behavior problems." According to Brown, the campus police officer, Deautric Sims, brought R.D. to his classroom. Brown said that Sims held R.D. by "both of his arms" as he brought him to the class and that R.D. declared to Sims, "I'm going to get you. I'm going to kill you." Brown testified that Sims "set [R.D.] down and then . . . left." Brown averred that after Sims left, R.D. continued with his declarations by stating, "I swear on my momma. I'm going to bring something here, bring a gun here and kill him." Brown said that he told R.D., "Son, you don't want to say that." According to Brown, another student also stated to R.D., "No, man. You don't want to say that." Brown said that R.D.'s response was to continue making statements that he was going to "get" Sims and that R.D. then left the room. Brown said that R.D. ignored his repeated instruction to come back.

Brown said that he is required to report all threats, so he reported this incident to the assistant principal. In his report, Brown recalled that R.D. had stated, "I swear on my momma, you know. I'm going to bring a gun here. I'm going to shoot this place up. I'm going to kill that man." Brown said that although Sims heard R.D.'s initial statement that he was going to kill Sims, Sims was not present in the room when R.D. stated that he was going to bring a gun to school

2

in order to do so. Brown averred that he was not afraid of R.D. and that he did not know whether R.D. was carrying a weapon when he made his declarations.

R.D. testified that on the day in question, Sims had taken him to the on-campus intervention room in error. By R.D.'s account, Sims had "said [he] was skipping" class, but he was not. R.D. said that Sims had restrained him by his arms and that Sims and "[t]he lunch ladies" were laughing at him. R.D. said that Sims's conduct upset him and that he began to cry. R.D. said that he never threatened Sims to his face and that he never said that he was going to bring a gun to school or that he was going to kill Sims; rather, R.D. said that he declared that he was going to tell his dad and uncle to come to school and fight Sims. R.D. averred that he did not have access to a gun and that he never intended for his comments to be heard by Sims. When asked why Brown said that R.D. had threatened to bring a gun to school and shoot Sims, R.D. said that Brown had "heard [him] wrong."

Based on the evidence presented regarding the threat charge, and based on stipulated-to evidence regarding charges of criminal trespass and failure to identify that the State had also alleged as delinquent conduct, the trial court adjudicated R.D. delinquent. After a disposition hearing, the trial court placed R.D. on probation for one year. This appeal followed.

### III. DISCUSSION

In one point, R.D. argues that the evidence is insufficient to support the trial court's finding that he intended to alarm Sims when he threatened to bring a

3

gun to school and shoot him. Specifically, R.D. argues that the evidence is insufficient to show that he intended to carry out his threat and that the evidence demonstrates that Sims was not present to hear R.D.'s threat to bring a gun to school and shoot him.

The State argues that Sims's presence was not necessary to prove that R.D. intended to alarm Sims and that when taking R.D.'s words in context, the evidence supports the trial court's finding that R.D. made his threats intending to alarm Sims. We agree with the State.

### A. Standard of Review in Juvenile Proceedings

Although juvenile proceedings are civil matters, the standard applicable in criminal matters is used to assess the sufficiency of the evidence underlying a finding that the juvenile engaged in delinquent conduct. *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *In re A.O.*, 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, pet. denied). According to that standard, in our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

4

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State,* 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("[T]he essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for

which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

### B. Evidence Supports the Trial Court's Finding

Under the Texas Education Code's "Exhibition of Firearms" statute, a person commits an offense if, in "a manner intended to cause alarm or personal injury to another person or to damage school property, the person intentionally exhibits, uses, or threatens to exhibit or use a firearm" on school property. Tex. Educ. Code Ann. § 37.125(a) (West 2007). Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

In this case, the State specifically pleaded that R.D. intended to cause alarm to Sims when he threatened to bring a gun to school and shoot him. Thus, the law authorized by the State's charging instrument, as modified by the factual details pleaded by the State, required the State to prove that R.D. intended to

6

cause alarm to Sims when he declared that he was going to bring a gun to school to "shoot this [school] up" and kill Sims.  *See Rabb*, 434 S.W.3d at 616.

### 1.     Whether R.D. Had the Capacity to Carry Out His Threat

In part of his sole point, R.D. argues that there is no evidence to support a finding that R.D. intended to or was capable of carrying out his threat to bring a gun to school and shoot Sims.  But "it is immaterial to [a threat] offense whether the accused had the capability or the intention to carry out his threat."  *Walker v. State*, 327 S.W.3d 790, 794 (Tex. App.—Fort Worth 2010, no pet.) (*citing Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982)).  Thus, we overrule this portion of R.D.'s point.

### 2.     Whether R.D. Intended to Alarm Sims

In the remainder of his sole point, R.D. cites cases dealing with assault by threat and robbery by threat and argues that because "Sims was not present when" R.D. made his threat, there is insufficient evidence to support the trial court's finding that he intended to alarm Sims.  *See Boston v. State*, 410 S.W.3d 321, 326 (Tex. Crim. App. 2013) (analyzing robbery by threat); *Olivas v. State*, 203 S.W.3d 341, 345–46 (Tex. Crim. App. 2006) (analyzing assault by threat). The State counters that exhibition of firearms is more akin to terroristic threat than other threat offenses and offers two example cases regarding terroristic threat in which the complainant did not immediately perceive the threat.  *See Zorn v. State*, 222 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd) (holding that terroristic threat "does not require the victim or anyone else to be actually placed

7

in fear of imminent serious bodily injury"); *Cook v. State*, 940 S.W.2d 344, 349 (Tex. App.—Amarillo 1997, pet. ref'd) ("[I]t is of no consequence whether the [threat] was heard live, or recorded and heard later.").

Like R.D. and the State, this court has found no case analyzing the education code's exhibition-of-firearms statute. We agree, however, that the exhibition-of-firearms statute is similar to the terroristic threat statute in that both statutes require that there be a threat and the intent to place another in a disturbed state of mind. *Compare* Tex. Penal Code Ann. § 22.07 (West 2011) (terroristic threat) *with* Tex. Educ. Code Ann. § 37.125(a) (exhibition of firearm by threat). That is, much like the terroristic threat offense element that the action intend to place another "in fear of imminent serious bodily injury" by a threat, the exhibition-of-firearms statute requires that the threat be made in such a manner that it intends to "alarm" another. Tex. Educ. Code § 37.125(a); Tex. Penal Code Ann. § 22.07.

Viewing the evidence in the light most favorable to the trial court's finding, we determine that a reasonable inference from the cumulative force of the evidence supports the trial court's finding that R.D. intended to alarm Sims when he repeatedly stated that he was going to "kill" Sims by bringing a gun to the school grounds and "shoot" him. Indeed, a reasonable inference to be drawn from R.D.'s comments is that he was angry with Sims because Sims had brought him to the detention hall in a manner that R.D. testified had upset him and caused him to cry. Brown testified that R.D. told Sims directly, "I'm going to kill

8

you." Further, despite both a teacher and fellow student expressing to R.D. that he should not make such threatening statements, R.D. persisted in his statements that he was going to "get" Sims and that he was going to do so by bringing a gun to school to shoot him. R.D. followed his statements by leaving the classroom and ignoring Brown's pleas for him to return.

R.D.'s statements, coupled with the fervor in which he repeated them, followed by his flight from the classroom despite instruction that he return, give rise to a reasonable inference that he knew his actions and words would be communicated to Sims, the on-campus police officer. Thus, it is a reasonable inference that R.D. intended that his threats would be conveyed to Sims and that they were intended to cause alarm to Sims. *Cf. In re C.S.*, 79 S.W.3d 619, 622 (Tex. App.—Texarkana 2002, no pet.) (holding evidence sufficient to support adjudication of juvenile for terroristic threat where evidence demonstrated that juvenile stated to multiple school employees that he was "going to blow up the school" because he believed that teachers had mistreated him and that evidence supported finding that he intended to prevent or interrupt the occupation of a building, room, or place of assembly).

While R.D. may be correct that it is also a reasonable inference that he never intended that Sims learn of his threats, we must resolve the conflict in these reasonable inferences in favor of the trial court's finding. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170. Thus, we overrule the remainder of R.D.'s sole point.

9

## IV. CONCLUSION

Having overruled R.D.'s sole point on appeal, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DELIVERED:  February 11, 2016

10