

# In the Missouri Court of Appeals
# Eastern District
## DIVISON FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101165 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| ROBERT METZINGER, | ) | Honorable Michael W. Noble |
| | ) | |
| Respondent. | ) | Filed: February 24, 2015 |

### *Introduction*

The State appeals from an order of the Circuit Court of the City of St. Louis dismissing with prejudice the information charging Robert Metzinger (Defendant) with making a terrorist threat under Section 574.115.[1]   The State claims that the trial court erred in dismissing the information because:  (1) the information followed the wording of MACH-CR 28.30, charged the statutory elements of the offense, and apprised Defendant of the facts constituting the elements of the offense charged; (2) the trial court did not have authority to dismiss the information for insufficiency with prejudice; and (3) the trial court improperly considered whether Defendant's communications constituted "true threats."  We affirm.

---

[1] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

*Factual and Procedural Background*

The State charged Defendant with making a terrorist threat in violation of Section 574.115.1(4)[2] based on the following four "tweets" published on Twitter, the social media network:[3]

- October 21, 2013:  Going to be tailgating with a #PressureCooker during games 3-4-5 in #STL during #WorldSeries.  #STLStrong #GoCards #postseason *from Springfield, MO.*

- October 22, 2013:  Putting my loft up for ridiculous "Boston-only" rate on @airbnb for the #WorldSeries.  Pressure cooker sold separately.

- October 22, 2013:  The #WorldSeries will be another finish line not crossed by #Boston.

- October 25, 2013:  Listening to the Offspring's "Bad Habit" and the lyrics just ring true of what will go down very soon.[4]

The information, charging Defendant with a class A misdemeanor, provided as follows:

---

[2] A person commits the class A misdemeanor crime of making a terrorist threat if such person:

> communicates a threat to cause an incident or condition involving danger to life, communicates a knowingly false report of an incident or condition involving danger to life, or knowingly causes a false belief or fear that an incident has occurred or that a condition exists involving danger to life: . . . (4) With criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation.

Mo. Rev. Stat. § 574.115.1(4).  Section 574.115.3 provides that "'threat' includes an express or implied threat."  Mo. Rev. Stat. § 574.115.3.

[3] "Twitter is a real-time information network that lets people share and discuss what is happening at a particular moment in time through the use of 'tweets,' updates composed of 140 characters." Dimas-Martinez v. State, 385 S.W.3d 238, 242 n.3 (Ark. 2011).

[4] The State later explained, in its response to Defendant's motion to dismiss, that:  "The Song referenced in the last message contains lyrics about violence, with repeated mentions of 'blowin' away.'"  The State also discussed the song and its lyrics at the hearing on Defendant's motion to dismiss.

2

[O]n or between October 21, 2013 and October 25, 2013, in the City of St. Louis, State of Missouri, the defendant knowingly communicated to the public a threat to cause an explosion, an incident involving danger to life, by tweeting repeated messages involving the detonation of an explosive device, and the defendant did so with criminal negligence with regard to the risk of causing the closure of any portion of Busch Stadium, a place of assembly.

Defendant filed a motion to dismiss the information pursuant to Rule 24.04(b)(2).[5] In his motion, Defendant claimed that "the information does not, and cannot, allege all essential elements of section 574.115" because Defendant's "sarcastic posts on Twitter did not constitute 'true threats' as a matter of law and cannot be punished by the State." More specifically, Defendant argued that the information was insufficient because it failed to: "identify which tweets the State intends to argue were threatening"; allege that Defendant communicated a "true threat"; and allege that Defendant's speech "created a substantial and unjustifiable risk of the evacuation of Busch Stadium." Defendant stressed that his tweets "express[ed] insensitive sarcasm, competition, and overt trash talking" in the excitement surrounding the Major League Baseball World Series, but did not communicate "*any threat*, let alone a 'true threat.'" (emphasis in original).

The State filed a response to Defendant's motion, in which it identified the "four specific tweets that are relevant to this case" and asserted that the information alleged "all essential

---

[5] Rule 24.04(b)(2) provides:

> Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

elements of Section 574.115." The State further contended that a jury should decide whether the tweets "were in fact a threat . . . not a question of law to be decided by the Court . . . ."

On February 28, 2014, the trial court held a hearing on Defendant's motion to dismiss. Defendant contended, among other things, that the tweets failed to constitute a "true threat" and argued that Defendant was "protected by the First Amendment because it's not a threat." The State responded, among other things: ". . . the context of a tweet with Boston coming to the World Series, and mentioning pressure cooker, the same explosive device that was used, and saying the finish line won't be crossed, which is where the bomb was placed at the Boston Marathon, that makes this in the context a threat." Finally, the State advised the trial court that: "You can't joke about setting off a pressure cooker bomb after the Boston Marathon."

After hearing both parties' arguments, the trial court stated:

> I do not find any of the tweets, in totality, even if you throw the music lyrics on top of it, rising even remotely to the level of a true threat or an implied threat. . . .
> These are untimely ramblings, that upon his inner circle advising him of the ridiculousness of them, he sought to pull them off prior to any intervention from any outside source. Therefore, I don't believe they're true threats or implied threats.

The same day, the trial court entered the following order: "Parties appeared. Motions heard. Fails to allege an element of Section 574.115 RSMo. Defendant's messages were not true threats. Motion to dismiss granted with prejudice." (emphasis in original). The State appeals.

### Standard of Review

Generally, we review the trial court's ruling on a motion to dismiss a criminal charge for an abuse of discretion. State v. Rodgers, 396 S.W.3d 398, 400 (Mo.App.W.D. 2013). However, whether an information fails to state an offense is a question of law, which we review de novo. State v. Rousseau, 34 S.W.3d 254, 259 (Mo.App.W.D. 2000).

4

*Discussion*

1. *State's Right to Appeal*

Generally, the State cannot appeal a judgment for the accused "whether it is upon a verdict of acquittal or upon a determination of a question of law, unless a right of appeal is unequivocally conferred by statute." State v. Stein, 876 S.W.2d 623, 625 (Mo.App.E.D. 1994). The State appeals this matter pursuant to Section 547.200.2, which permits the State to appeal in criminal cases "except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant." Mo. Rev. Stat. 547.200.2. In a court-tried case, jeopardy attaches when the court begins to hear evidence on the issue of guilt. State v. Thomas, 434 S.W.3d 524, 528 (Mo.App.E.D. 2014). In a jury trial, jeopardy attaches when the jury is impaneled and sworn. State v. Fassero, 256 S.W.3d 109, 114 (Mo. banc 2008).

Here we have a situation where the trial court considered matters outside of the information for the purpose of determining a threshold legal issue. The United States Supreme Court analyzed a similar procedural posture in U.S. v. Serfass, considering whether jeopardy attached when the trial court dismissed an indictment "based on a legal ruling . . . after an examination of records and an affidavit setting forth evidence to be adduced at trial." 420 U.S. 377, 379 (1975). The Court held that jeopardy did not attach because the defendant "was not then, nor has he ever been, 'put to trial before the trier of facts,'" and he "had not waived his right to a jury trial." Id. at 389. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." Id. at 391-92. We cited Serfass with approval in State v. Casaretto, noting that "the United States Supreme Court has rejected the view that trial court reference to matters outside the record on a motion to

5

dismiss automatically results in jeopardy for the defendant." 818 S.W.2d 313, 315 (Mo.App.E.D. 1991).

The trial court dismissed the charge on the basis of a deficiency in the information – specifically, its failure to allege facts constituting an offense under Section 574.115. The trial court heard arguments on Defendant's motion to dismiss the information, but it did not hear evidence on the question of Defendant's guilt or innocence. Because Defendant sought termination of the proceedings against him on a basis unrelated to factual guilt or innocence, jeopardy did not attach and the trial court's dismissal is appealable. See U.S. v. Scott, 437 U.S. 82, 95 (1978). See also State v. Diaz-Rey, 397 S.W.3d 5, 8 (Mo.App.E.D. 2013) (State may appeal where "the dismissal was based on the insufficiency of the information, and the dismissal had the effect of foreclosing any further prosecution of defendant on [that] charge."); State v. Smothers, 297 S.W.3d 626, 632 (Mo.App.W.D. 2009) ("If the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach."); Casaretto, 818 S.W.2d at 315 (Section 547.200.2 is broad enough to include cases where an indictment or information is dismissed on grounds "dehors the record.").

2. *Sufficiency of the Information*

In its first point, the State claims that the trial court erred in dismissing the information because it charged the essential elements of the offense and apprised Defendant of the facts constituting the offense. More specifically, the State asserts that the information tracked the language of the Missouri Approved Charges – Criminal (MACH-CR) and alleged all of the elements set forth in Section 574.115. Defendant contends in response that: "[t]his case is not –

6

and never has been – about whether the charging document the State submitted mechanically recites the elements of the crime charged."

The Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution guarantee a defendant the right "to be informed of the nature and cause of the accusation . . . ." Rule 23.01 provides that the indictment or information shall "[s]tate plainly, concisely, and definitely the essential facts constituting the elements of the offense charged . . . ." Rule 23.01(b)(2). "Measured by these standards, the test of the sufficiency of an indictment is whether it contains all the essential elements of the offense as set out in the statute and clearly apprises defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution." State v. Reese, 687 S.W.2d 635, 636 (Mo.App.S.D. 1985) (quoting State v. Strickland, 609 S.W.2d 392, 395 (Mo. banc 1980)).

Generally, an information or indictment is sufficient if it contains all essential elements of the offense as set out in the statute creating the offense. State v. O'Connell, 726 S.W.2d 742, 746 (Mo. banc 1987). However, where "the statute uses generic terms in defining the offense, it is necessary to recite sufficiently the conduct constituting the offense in order to accomplish the purpose of the indictment or information." Liggins v. State, 786 S.W.2d 207, 208 (Mo.App.E.D. 1990) (citing O'Connell, 726 S.W.2d at 746). In addition, an indictment or information is generally sufficient "if it is substantially consistent with the forms of indictments or informations which have been approved by the Missouri Supreme Court." Griffin v. State, 185 S.W.3d 763, 766 (Mo.App.E.D. 2006). See also Rule 23.01(b). Significantly, the approval of a pattern charge "does not foreclose 'any legal, constitutional, procedural, pleading, evidentiary, instructional or other issue which may arise in cases pleaded, tried or appealable under any laws covered by the MACH-CR forms.'" Reese, 687 S.W.2d at 637 (quoting MACH-CR 1.00.2).

7

In this case, the information purported to charge Defendant with the class A misdemeanor of making a terrorist threat in violation of Section 574.115. "Section 574.115 proscribes threats of violence or false public alarms made to terrorize or cause serious public inconveniences." State v. Tanis, 247 S.W.3d 610, 614 (Mo.App.W.D. 2008).

The Missouri Approved Charge for the misdemeanor offense of making a terrorist threat states, in relevant part:

> The (Grand Jurors) (Circuit Attorney) (Prosecuting Attorney) of the (City) (County) of _____, State of Missouri, charge(s) that the defendant, in violation of Section 574.115, RSMo, committed the (class C felony) (class D felony) (class A misdemeanor) of making a terroristic threat, punishable upon conviction under [*Insert appropriate punishment provision. See Notes on Use 2.*], in that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant [*Insert one of the following. Omit brackets and number.*]
>
> knowingly communicated to [*Identify person, place, organization, etc. to whom threat was communicated.*] a threat to cause [*Describe incident or condition threatened.*], (an incident) (a condition) involving a danger to life, by [*Describe how threat was communicated.*],
>
> with criminal negligence with regard to the risk of causing the (evacuation) (quarantine) (closure) of (any portion of) [*Describe building or place.*], (a building) (an inhabitable structure) (a place of assembly) (a facility of transportation).

MACH-CR 28.30. As previously stated, the information in the instant case alleged:

> [O]n or between October 21, 2013 and October 25, 2013, in the City of St. Louis, State of Missouri, the defendant knowingly communicated to the public a threat to cause an explosion, an incident involving danger to life, by tweeting repeated messages involving the detonation of an explosive device, and the defendant did so with criminal negligence with regard to the risk of causing the closure of any portion of Busch Stadium, a place of assembly.

In his motion to dismiss, Defendant contended, among other things, that the information was insufficient because the State failed to include the tweets upon which the information was based. More specifically, Defendant argued: "Without [the tweets], the information is

insufficient in that it does not clearly apprise defendant of the facts constituting the offense so as to enable defendant to prepare a defense to bar future prosecution for the same offense, and to permit the trial court to decide whether sufficient facts are alleged to support a conviction." (internal quotation omitted). We need not determine whether the words "tweeting repeated messages involving detonation of an explosive device" clearly apprised Defendant of the essential facts constituting the charged offense because the State remedied any alleged deficiency by providing the specific language at issue in its response to Defendant's motion to dismiss.[6]

As we noted above, even where an information tracks the MACH-CR and/or the relevant statute and adequately informs a defendant of the charges against him, a defendant may properly raise legal, constitutional, or other issues. Thus, as relevant here, we must nevertheless affirm the dismissal if the trial court properly concluded that the information failed to state an offense in violation of Section 574.115.

Neither the State nor Defendant disputes that Defendant tweeted the statements that formed the basis for the charge of making a terrorist threat. The dispute is whether the tweets constituted the type of threatening communication that the legislature intended to and may, consistent with the Missouri and U.S. Constitutions, criminalize. If, in spite of tracking the MACH-CR and statute, the tweets did not, as a matter of law, constitute "true threats," the information is fatally deficient for failure to allege an essential element of a crime under Section 574.115 – "communicates a *threat* to cause an incident or condition involving danger to life." (emphasis added). Point one is denied.

---

[6] We note that, as discussed *infra*, it is clear from a review of Missouri cases considering Section 574.115 that the "true threat" analysis requires an examination of the allegedly threatening language upon which the charge is based. In its brief, the State simply asserts that "the information provides sufficient factual detail." The State cites no support for its position.

3. *Trial Court's Authority to Resolve the "True-Threat" Question on a Pre-Trial Motion to Dismiss*

    a. *Whether the trial court properly considered the tweets*

In its third point,[7] the State asserts that the trial court erred in dismissing the information based on its "factual determination that [Defendant's] messages were not threats because no evidence was ever presented from which the court could make such a determination." Defendant counters that the trial court properly determined as a threshold matter of law that the communications were not true threats because the tweets were: (1) facially non-threatening; (2) not directed at an individual or identifiable group; and (3) posted on Twitter, "the modern epitome of a public forum."

One purpose of an indictment or information is to "permit[] the trial court to determine whether sufficient facts are averred to support a conviction." State v. Atterberry, 659 S.W.2d 339, 341 (Mo.App.S.D. 1983). Thus, "[a]n indictment is bad and is properly dismissed if all the facts stated are true, and yet the accused can be innocent of the crime intended to be charged, or if the acts alleged in the indictment if proven do not constitute a violation of the law." 42 C.J.S. INDICTMENTS § 160. See, e.g., Rousseau, 34 S.W.3d at 262; State v. Harrison, 805 S.W.2d 241, 243 (Mo.App.E.D. 1991). "Defenses based on defects in the information or indictment are generally required to be raised by motion before trial[.]" Rousseau, 34 S.W.3d at 258 (citing Rule 24.04(b)(2)).

Defendant moved the trial court to dismiss the information on the grounds that, among other reasons, the four tweets upon which the State based the charge of making a terrorist threat were not "true threats," and therefore could not constitute a violation of Section 574.115. The trial court agreed and dismissed the information, stating: "[The information] [f]ails to allege an

---

[7] For ease of analysis, we consider points two and three out of order.

element of Section 574.115 RSMo. Defendant's messages were <u>not</u> true threats." (emphasis in original). Stated another way, the trial court found that the facts alleged in the information did not support an essential element of the offense ("communicates a threat") and, therefore, the information on its face charged no offense.

When the basis of a defendant's motion to dismiss is a question of law, the trial court may, for the purpose of deciding the legal issue, consider material outside of the information or indictment. <u>See, e.g.</u>, <u>State v. Fernow</u>, 328 S.W.3d 429, 431 (Mo.App.E.D. 2010) (trial court necessarily considered facts outside of the information when it determined that the information was insufficient to charge defendant with escape from custody after arrest for a felony because, at the time he absconded, he was not in custody for a felony but pursuant to a *capias* warrant). <u>See also</u> <u>U.S. v. Weaver</u>, 659 F.3d 353, 355 n.1 (4th Cir. 2011) (circuit courts almost uniformly conclude that district courts may consider a motion to dismiss an indictment where the government does not dispute ability of court to reach motion and "proffers, stipulates or otherwise does not dispute the pertinent facts"); <u>U.S. v. Flores</u>, 404 F.3d 320, 323 (5th Cir. 2005) (rejecting government's contention that district court procedurally erred in dismissing the indictment where "district court based its disposition entirely on its resolution of a legal question and the facts are undisputed"); <u>U.S. v. Risk</u>, 843 F.2d 1059, 1061 (7th Cir. 1988) (upholding dismissal for insufficient indictment where government admitted the facts giving rise to indictment and the admitted facts failed to state an offense).

To the extent the State implies that the trial court erred in considering the four tweets because "no evidence was ever presented from which the trial court could make that [true-threat] determination," we note that the State volunteered the four tweets in response to Defendant's motion to dismiss. Additionally, without objection, counsel for the State and Defendant both

11

discussed and analyzed the language of the four tweets at the hearing on Defendant's motion to dismiss and at oral argument on appeal. Where, as here, the State proffers the allegedly threatening communications in response to a defendant's motion to dismiss the information, it cannot fault the trial court for considering those communications when ruling upon the motion.

The State also suggests that a trial court may not dismiss an information for insufficiency before trial on the particular grounds here – that the facts alleged in the information do not constitute the offense charged – because this requires a factual determination prior to the introduction of evidence.[8] As an initial matter, we do not agree that the trial court's analysis required a factual determination. Defendant did not dispute and the trial court appears to have accepted that Defendant made the statements that are the basis for the charged offense.

While Missouri courts have not specifically considered the propriety of a pre-trial analysis of whether communications the State seeks to criminalize are "true threats," federal courts have held that whether a prosecution "encroaches on constitutionally protected speech is a question appropriately decided by the [c]ourt as a threshold matter." U.S. v. Baker, 890 F.Supp. 1375, 1385 (E.D. Mich. 1995), affirmed by U.S. v. Alkhabaz, 104 F.3d 1492, 1492 (6th Cir. 1997). In Alkhabaz, the Sixth Circuit considered whether the trial court erred in dismissing before trial the indictment charging the defendant with violations of 18 U.S.C. § 875(c), which prohibits the interstate communication of threats to injure or kidnap another person. Alkhabaz, 104 F.3d at 1501. The Sixth Circuit affirmed dismissal of the indictment on the grounds that the

---

[8] In its brief, the State also suggested that dismissal was improper because whether Defendant's communications constituted true threats was a question of fact properly left for the jury. At oral argument, however, the assistant circuit attorney conceded, "I do believe it's a determination as a matter of law," and clarified, "but I do not believe [the trial judge] had all the facts that he could make that determination from." We also note that the relevant Missouri Approved Instruction does not require the jury to consider whether the threat at issue constitutes a "true threat." MAI-CR 328.30. Nor do the Notes on Use require that the instruction define the word "threat" within the meaning of Section 574.115. Id.

12

communications at issue (email messages referring to sexual violence) "did not constitute 'threats' of *any* kind . . . ." Id. (emphasis in original). See also U.S. v. Stock, 728 F.3d 287, 298 (3d Cir. 2013) ("[A] court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a threat or a true threat."); U.S.v. Landham, 251 F.3d 1072, 1082 (6th Cir. 2001) (trial court erred when it failed to dismiss indictment on basis of absence of "true threats"); In re George T., 33 Cal. 4th 620, 633 (Cal. 2004) (when a defendant charged with the crime of making a threat raises "a plausible First Amendment defense," a reviewing court should independently examine the record "to make certain that what the government characterizes as speech falling within an unprotected class actually does so.").

We do not agree that under the circumstances of this case the "true threat" analysis was a jury question. Defendant's motion to dismiss properly raised the legal question of whether Defendant's tweets were the kind of communication sufficient, as a matter of law, to subject Defendant to prosecution under Section 574.115. Accordingly, if the tweets were not "true threats," the information charged no crime and was insufficient as a matter of law.

b. *Whether Defendant's tweets constituted "true threats"*

"The First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." State v. Wooden, 388 S.W.3d 522, 525 (Mo. banc 2013) (quoting Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972)). More specifically, "[t]he freedom of speech guaranteed in the United States and Missouri Constitutions limits the ability of our legislature to criminalize spoken words." State v. Roberts, 779 S.W.2d 576, 578 (Mo. banc 1989).

"The protections afforded by the First Amendment, however, are not absolute . . . ." Virginia v. Black, 538 U.S. 343, 358 (2003) (citing Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942)). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." Wooden, 388 S.W.3d at 526 (quoting Chaplinsky, 315 U.S. at 571-72). "Unprotected speech includes 'the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" Id. (quoting Chaplinsky, 315 U.S. at 572).

In Virginia v. Black, the United States Supreme Court reaffirmed that the First Amendment allows states to ban "true threats." 538 U.S. at 539.[9] However, the Court provided minimal guidance to courts tasked with the challenge of distinguishing "true threats" from protected speech. See Crane, Paul, *"True Threats" and the Issue of Intent*, 92 VA. L. REV. 1225, 1254 (2006) ("For the first time, the Court in Black defined the term 'true threat'; however, in providing a definition, the Court created more confusion than elucidation.").

In Black, the Court held that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat." 538 U.S. at 359-60 (internal citation omitted) (quoted in In the Interest of: C.G.M., II v. Juvenile Officer, 258 S.W.3d 879, 883 (Mo.App.W.D. 2008)). The Court further explained that "[i]ntimidation in the constitutionally proscribable sense of the word is a

---

[9] In Black, the Court considered the constitutionality of a Virginia statute prohibiting the burning of a cross "with the intent of intimidating any person or group of persons." 538 U.S. at 352 n.1 (quoting Va. Code Ann. § 18.2-423.01). The Court held that "Virginia's statute does not run afoul of the First Amendment insofar as it bans cross burning with intent to intimidate," but ruled that it was unconstitutionally overbroad because it treated cross-burning as prima facie evidence of intent to intimidate. 538 U.S. at 362, 364.

type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." Id. at 360. Following Black, federal courts have held that an indictment sufficiently charges the defendant with the crime of transmitting a "true threat" in violation of 18 U.S.C. § 875(c) when it alleges that the defendant communicated a statement that "a reasonable jury could find . . . expressed an intent to injure in the present or future." Stock, 728 F.3d at 301. See also U.S. v. Martinez, 736 F.3d 981, 987 (11th Cir. 2013) ("true threats" are statements that contain a "serious expression of violent intent.").[10]

Neither the Missouri legislature nor the Missouri Supreme Court has defined the term "threat" as it is used in Section 574.115.[11] However, the Western District of the Court of

---

[10] A recent commentator has described the post-Virginia v. Black judicial consensus regarding "true threats" as follows:

> True threats involve words which are voluntarily and intentionally uttered which avow a present or future determination to inflict physical injury on an individual or individuals. A true threat must convey a serious or genuine threat, and must be distinguished from idle, careless talk, exaggeration, jests, or political hyperbole.

Strasser, Mark, *Advocacy, True Threats, and the First Amendment*. 38 HASTINGS CONST. L.Q. 339, 368 (2011) (internal quotations omitted). See also Zimmerman, Michael Barrett, *One-Off & Off-Hand: Developing an Appropriate Course of Liability in Threatening Online Mass Communication Events,* 32 CARDOZO ARTS & ENT. L.J. 1027, 1038-40 (2014).

[11] More generally, however, the Missouri Supreme Court has long held that "statutes abridging speech are constitutional to the extent that they prohibit only that speech which is likely to incite others to immediate violence." State v. Swoboda, 658 S.W.2d 24, 25 (Mo. banc 1983). Judge Blackmar, considering the use of the word "threaten" in Section 574.010.1(1)(c), RSMo 1978, asserted that the statute passed constitutional muster because "we could reasonably interpret the term 'threaten' to require that the utterance be so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and immediate prospect of execution." State v. Carpenter, 736 S.W.2d 406, 409 (Mo. banc 1987) (Blackmar, J., dissenting) (internal quotation omitted). See also State v. Starkey, 380 S.W.3d 636, 642 (Mo.App.E.D. 2012) (Section 565.225, RSMo 2008, which criminalizes stalking, defines "credible threat" as "threat communicated with the intent to cause the person who is the target of the threat to

Appeals has had several opportunities to apply the true-threat doctrine within the context of Section 574.115. An examination of the limited relevant case law provides guidance in determining whether Defendant's tweets constituted unprotected true threats prohibited by Section 574.115.

In C.G.M., the Western District held that a statement is not a true threat when a listener could not reasonably consider the statement to be a serious expression of an intent to cause injury to another. 258 S.W.3d at 883. There, the defendant, then twelve years of age, told his friend "he may get dynamite from his dad for his birthday" and asked if he "wanted to help him blow up the school." 258 S.W.3d at 880. Reversing the defendant's conviction, the court held that the defendant's communication was not a "true threat," as defined by the United States Supreme Court in Black, because it was not a declaratory statement, did not express an intent to cause an incident involving danger to human life, and did not place his friend in fear that the threat would be carried out.[12] Id. at 883.

_____

reasonably fear for his or her safety, or the safety of his or her family, or household members . . . .").

[12] Although decided on different grounds, the recent decision of State v. Rouch similarly suggests that a statement is not a true threat when the circumstances surrounding its communication reveal that it is not a serious expression of intent to cause bodily harm. Case No. WD77725, 2014 WL 7174236, *1 (W.D.App. Dec. 16, 2014). In that case, police officers obtained and executed a warrant to search for firearms the home of a college professor who posted on Facebook: "By October, I'll be wanting to get up to the top of the bell tower with a high powered rifle – with a good scope, and probably a [G]atling gun as well." Id. at *2. In their search, police officers discovered marijuana and drug paraphernalia (but no firearms), and the State charged the defendant with drug-related offenses. Id. Following an evidentiary hearing, the trial court granted the defendant's motion to quash the search warrant and suppress the evidence seized because "there was no probable cause to believe that criminal contraband or evidence of a criminal offense would be discovered." Id. at *3. On appeal, the Western District rejected the State's assertion that the defendant's possession of a firearm would have been evidence "that he intended for people to feel threatened by his Facebook post and verbal statement about a bomb . . . ," and it affirmed the trial court's ruling. Id. at *4.

16

Here, as in <u>C.G.M.</u>, the language of the tweets at issue demonstrated on their face that they were not serious expressions of an intent to cause injury to another. The parties do not dispute that Defendant published the statements on Twitter during the 2013 World Series. In his tweet of October 21, 2013, Defendant referred to "tailgating . . . during games 3-4-5" and included the following: "#WorldSeries. #STLStrong #GoCards #postseason . . . ." Defendant's tweets of October 22, 2013 also contained "#WorldSeries."[13] Defendant's tweets facially reveal that they were made in the context of sports rivalry, an area often subject to impassioned language and hyperbole.[14] While Defendant's references to pressure cookers and allusions to the Boston Marathon bombing were tasteless and offensive, the context of his tweets was such that a reasonable recipient would not interpret them as serious expressions of an intent to commit violence. See <u>Iowa v. Milner</u>, 571 N.W.2d 7, 10 (Iowa 1997) (statute prohibiting threats to place an incendiary or explosive device where it will endanger people or property "does not reach expressions that a reasonable person would understand as a joke, idle talk, or mere statements of political hyperbole."); 16A AM. JUR. 2D CONSTITUTIONAL LAW § 527 (A true threat "excludes the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.").

In contrast, the Western District has held that a statement constitutes a "true threat" when, on its face and in light of the circumstances in which it was made, it communicates a serious, present intent to inflict physical harm on another. <u>Tanis</u>, 247 S.W.3d at 614; <u>Browder v. State</u>, 326 S.W.3d 33, 35 (Mo.App.W.D. 2010). In <u>Tanis</u>, the defendant committed the class D felony

---

[13] While Defendant's tweet of October 25, 2013 did not expressly reference the World Series, neither did it suggest the actor, means, or target of the alleged implied threat.

[14] See Wasserman, Howard M., *Fans, Free Expression, and the Wide World of Sports*, 67 U. PITT. L. REV. 525, 579 (2006) ("Nor can we forget cheering speech's dependence on humor, satire, and rhetorical hyperbole and overstatement, none of which is intended or reasonably capable of being taken literally.").

17

of making a terrorist threat when he informed a police officer on a college campus that "he had explosives in his truck and that he was assuming command and taking over." 247 S.W.3d at 614. In Browder, the defendant violated Section 574.115 when he communicated "a threat to the [school that] someone was getting their ass kicked by stating, you know me, if you don't take care of it I'll take care of it," and, when advised not to make threats, stated, "I'm not, I'm just telling you what I'm going to do." 326 S.W.3d at 36.

Defendant's tweets are distinguishable from the threats in Tanis and Browder because the State established without dispute at the hearing that they were made in the context of sports rivalry and in the spirit of "trash talking." Nothing in Defendant's tweets credibly suggested, either directly or indirectly, that Defendant was threatening violent acts that were likely to occur.[15]

We conclude that the trial court properly considered the language of the four tweets and, under the rather unique circumstances of this case, correctly determined, as a matter of law, that the four tweets did not constitute "true threats" and, therefore, were improperly criminalized. Accordingly, the information did not charge the offense of making a terrorist threat within the meaning of Section 574.115 and the trial court did not err in dismissing the information for insufficiency. Point three is denied.

*3. Dismissal with Prejudice*

In its second point on appeal, the State claims the trial court "erred in dismissing the case with prejudice because the court did not have authority to do so." More specifically, the State contends that, even if dismissal for insufficiency of the information were proper, "the appropriate

---

[15] Our examination of the cases cited in the exhaustive annotations of 45 A.L.R. 4th 949 reveal no cases that have arisen in a sports rivalry context. John P. Ludington, Annotations, *Validity & Construction of Terroristic Threat Statutes,* 45 A.L.R. 4th 949 (1986).

response for the trial court to take would have been to dismiss the case *without prejudice*, allowing the State to refile charges with a sufficient information." In response, Defendant asserts that the trial court "has undoubted power to dismiss an information with prejudice before any evidence is presented."

As previously discussed, trial courts have the authority to dismiss a criminal information or indictment based on its insufficiency. See Rule 24.04(b)(2); Fernow, 328 S.W.3d at 431. Moreover, trial courts may dismiss an information for insufficiency with or without prejudice. State v. Stringer, 36 S.W.3d 821, 823 (Mo.App.S.D. 2001). "A dismissal *with* prejudice is a final order, but a dismissal *without* prejudice is not a final order unless the dismissal has the 'practical effect of terminating the litigation in the form in which it is cast or in the plaintiff's chosen forum.'" Smothers, 297 S.W.3d at 630 (quoting State v. Burns, 994 S.W.2d 941, 943 (Mo. banc 1991)) (emphasis in original). "If the judgment precludes the litigant from maintaining the action in the forum chosen, it is a final judgment, irrespective of whether it is denominated 'with prejudice' or 'without prejudice.'" Id. at 631.

In the instant case, the trial court dismissed the information with prejudice because the four tweets did not constitute the offense charged (making a terrorist threat under Section 574.115). Even if the trial court had dismissed the information *without* prejudice, the State's refiling of the information charging Defendant with violating Section 574.115 on the basis of the same four tweets would be a "futile act" given that the trial court previously held that those tweets are not threats prohibited by the statute. See, e.g., id. ("Nevertheless, refiling the same charges, based on [forgery statutes], would have been a 'futile act,' given that the circuit court had already ruled that the facts submitted cannot, as a matter of law, fulfill the elements of forgery."). In other words, whether the trial court characterized its dismissal of the information

19

as with or without prejudice, the dismissal "has the effect of foreclosing any further prosecution" under Section 574.115 with respect to the four tweets at issue here.

In support of its position, the State contends that a trial court may not dismiss a case with prejudice "absent a speedy trial violation, even in the circumstance of a dismissal based on a deficient information . . . ." In support of this proposition, the State cites State v. Honeycutt, 96 S.W.3d 85 (Mo. banc 2003) and State v. Williams, 407 S.W.3d 691 (Mo.App.E.D. 2013).[16] Both cases are distinguishable.

In Honeycutt, the State charged a defendant with driving on the wrong side of the road, and the charge "languished in the court's files" for approximately three years. 96 S.W.3d at 87. When the prosecutor finally announced the State's intent to proceed to trial, the trial court dismissed the charge on its own motion for lack of prosecution. Id. The State appealed the dismissal, and the Court held that: "[A] trial judge does not have the inherent authority to dismiss a case *with prejudice* for failure to prosecute in the absence of a speedy trial violation." Id. at 89 (emphasis in original).

In Williams, the trial court dismissed with prejudice a charge of possession of a controlled substance for failure to prosecute when the prosecutor failed to appear at the defendant's plea hearing. 407 S.W.3d at 692-93. The defendant did not allege a speedy trial violation. Id. at 693. Citing Honeycutt, we reversed because, in the absence of a speedy trial

---

[16] The State also cites State v. Morton, which broadly held that a "trial court has no jurisdiction to dismiss an indictment or information." 971 S.W.2d 335, 340 (Mo.App.E.D. 1998). Morton relied on State ex rel. Griffin v. Smith, 258 S.W.2d 590, 593-94 (Mo. banc 1953), a case which the Missouri Supreme Court overruled, in relevant part, in Honeycutt, 96 S.W.3d at 89.

violation, the trial court lacked authority to dismiss the case with prejudice for failure to prosecute.[17] Id. at 693.

Because here the trial court dismissed Defendant's case for insufficiency of the information rather than for failure to prosecute, Honeycutt and Williams are inapplicable. We see no basis to enlarge the Honeycutt holding – that a trial court may not dismiss an information or indictment with prejudice for failure to prosecute absent a speedy trial violation – to include dismissals with prejudice based on insufficiency of the information under the circumstances here, where it would be futile for the State to refile an information charging Defendant with violating Section 574.115 based on the same four tweets. Point two is denied.

### *Conclusion*

Because the tweets that formed the basis for the information did not constitute "true threats," the information failed to allege a violation of Section 574.115. The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

---

[17] We note that Williams misstated the Court's holding in Honeycutt, stating: "[T]he trial court does not have the authority to dismiss a case *with prejudice* absent a speedy trial violation." 407 S.W.3d at 693. The court omitted critical language limiting the application of its holding to dismissals *for failure to prosecute*.

21