**Corrected Opinion**
**May 22, 2023**



# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J.T.S., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85142 |
| | ) | |
| JUVENILE OFFICER, | ) | Filed:  April 25, 2023 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY**
**THE HONORABLE PATRICK K. ROBB, JUDGE**

**BEFORE: DIVISION ONE: W. DOUGLAS THOMSON, PRESIDING JUDGE,**
**LISA WHITE HARDWICK, JUDGE, AND KAREN KING MITCHELL, JUDGE**

D.J.T.S. appeals from the juvenile court's judgment finding that he committed the delinquency offense of making a terrorist threat.  He contends the juvenile court erred in finding him delinquent because his statements about shooting up a basketball game did not communicate a true threat and were protected by his constitutional right of free speech.  For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In December 2021, the Juvenile Officer of Buchanan County ("Juvenile Officer") filed a petition alleging that 14-year-old D.J.T.S. committed the delinquency offense of

making a terrorist threat in the second degree. §§ 211.031.1(3) and 574.120. [1] The petition alleged that D.J.T.S. made an "express or implied threat . . . by communicating to other students that he was going to 'shoot up' the basketball game at Bode Middle School later that evening and kill multiple people, and in doing so, [D.J.T.S] recklessly disregarded the risk of causing the evacuation, quarantine or closure of Bode Middle School." At the adjudication hearing, the juvenile court heard testimony from three students and the school principal about D.J.T.S.'s statements and conduct during the two-day period before a girls' basketball game was scheduled to take place on December 15, 2021.

V.B., a student and basketball player, testified that, "the day before [the basketball game], [D.J.T.S.] told a lot of people not to come to school." The next day during science class, D.J.T.S. told her about "his" gun, and that he was going to "cut the cameras" at the basketball game and "kill people." He showed her pictures of the gun and said he was going to shoot "180 people or more." He also asked her "a lot of questions about the game." She reported the threat to school officials because D.J.T.S.'s statements made her feel scared and uncomfortable about what might happen.

D.C., a student in the same science class, testified that D.J.T.S. threatened to shoot up "the basketball game that was later that night at our school." When the incident was being investigated, D.C. gave a statement to the vice-principal regarding the threat. Another student, P.K., testified that D.J.T.S. said he had a gun during the science class

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2022 Cumulative Supplement.

and that he was going to shoot up the girls' basketball game." When questioned about the incident, P.K. told school officials that he thought D.J.T.S. was joking.

Dr. Sarah Barmann-Smith, the principal of Bode Middle School, testified that she called D.J.T.S. into the office on December 15, 2021, to investigate reports that he had warned students not to come to school because he was going to use his weapon at the school basketball game. D.J.T.S. acknowledged making the statement. He first told Barmann-Smith that he didn't know why he said it and then subsequently said he was joking about the shooting. In response to questions, he showed Barmann-Smith various pictures on his phone of him holding a gun. He told her that the gun belonged to his father. D.J.T.S. was taken into custody by the school resource officer (a St. Joseph police officer), shortly after talking with Barmann-Smith.

D.J.T.S. did not put on any evidence at the adjudication hearing. After closing arguments, the juvenile court found the allegations to be true beyond a reasonable doubt and assumed jurisdiction over D.J.T.S. The juvenile court found that D.J.T.S.'s comments "went beyond making a [joke]." The juvenile court noted that D.J.T.S. "actually showed pictures that logically would make people think that he has the capability to follow through with those statements" and acknowledged that two of the three students who heard the threat were concerned enough to pass the information to others. The court also found that D.J.T.S. communicated a plan when he stated that he would "cut the cameras" prior to commencing the shooting. The juvenile court concluded that "it's reasonable to infer that if [D.J.T.S.] would have not been brought into custody and would have been free in light of that information of the pictures, the

3

statements, the threat, that it's highly likely that the basketball game would not have taken place."

After a dispositional hearing, the court placed D.J.T.S. on probation under supervision by the Juvenile Officer. D.J.T.S. appeals.

**STANDARD OF REVIEW**

"Juvenile proceedings are reviewed in the same manner as other court-tried cases." *D.C.M v. Pemiscot Cty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc. 2019) (citation and quotations omitted). We will, therefore, affirm a judgment in a juvenile proceeding "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which is free to believe none, part, or all of their testimony." *D.C.M.*, 578 S.W.3d at 786 (citation and quotations omitted). Questions of law are reviewed de novo. *B.O. v. Juvenile Office*, 595 S.W.3d 506, 509 (Mo. App. 2020) (citation omitted).

Where, as here, "a juvenile is alleged to have committed an act that would be a criminal offense if committed by an adult, the standard of proof, like that in criminal trials, is beyond a reasonable doubt." *D.C.M.*, 578 S.W.3d at 786 (citations omitted). Consequently, we must determine "whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt." *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. 2013). "In determining the sufficiency of the evidence, we view the evidence and reasonable inferences which may

4

be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *Id*. (citation and quotations omitted).

## ANALYSIS

In his sole point on appeal, D.J.T.S. contends the juvenile court erred in finding him delinquent because his statements about shooting up his middle school basketball game did not communicate a true terroristic threat. Instead, D.J.T.S. contends he was joking and that his comments were not serious enough to be unprotected by the constitutional right of free speech.

To prove the delinquency offense of making a terrorist threat in the second degree, the juvenile officer was required to show beyond a reasonable doubt that D.J.T.S. "(1) was aware he was communicating an express or implied threat to cause an incident endangering human life and (2) consciously disregarded a substantial and unjustifiable risk of causing the evacuation or closure of the school." *D.C.M.*, 578 S.W.3d at 786-87; Section 574.120.1(1). Evidence of "definite, declaratory statement[s]" can indicate the speaker's "awareness of the intent to cause danger to human life." *Id.* "[T]he desired reaction of the listener" may also "constitute some evidence of the intent of the person making the statement." *Id.* Additionally, it is not necessary for the building to have been evacuated or placed on lockdown in order to prove the offense of making a terrorist threat in the second degree. *D.C.M.,* 578 S.W.3d at 787.

When D.J.T.S told his classmates at Bode Middle School that he was going to shoot up the girls' basketball game on December 15, 2021, he communicated an express threat to cause an incident endangering human life. V.B. testified that D.J.T.S. told her of

5

his plan to "cut the cameras" at her basketball game and kill "180 people or more." He showed her pictures of the gun that he planned to use in the shooting. He gave a specific date, time frame, and location to carry out his plans and warned students not to come to school on December 15, 2021. During his science class on that date, he also told fellow students D.C. and P.K. that he had a gun and he intended to shoot up the girls' basketball game that evening. Given the collective testimony, the evidence was sufficient to show that D.J.T.S. made definite, declaratory statements of his intent to target the basketball game attendees and endanger human lives.

The record also indicates that D.J.T.S. intended to frighten students with his threats and that he achieved that objective. After hearing the statements, V.B. felt "scared" and "uncomfortable" about what would happen at her basketball game. She and D.C. both reported the threats to school authorities. Although D.J.T.S. later told the school principal that he was joking about the shooting, the fact that he showed photos of himself with a gun was a sufficient basis for the juvenile court to determine that his actions "would make people think that he has the capability to follow through with [his] statements." D.J.T.S. contends the court erred in determining that his statements constituted a "true threat" outside the protections of the First Amendment.

Under the First Amendment, the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *State v. Metzinger,* 456 S.W.3d 84, 95 (Mo. App. E.D. 2015) (citations omitted). "The protections afforded by the First Amendment, however, are not absolute." *Id.* "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have

6

never been thought to raise any Constitutional problem." *Id.* "These limited areas include speech expressed as part of a crime, obscene expression, incitement, and fraud." *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019) (internal quotation marks and citation omitted).

Accordingly, "the First Amendment allows states to ban 'true threats.'" *Metzinger*, 456 S.W.3d. at 95 (citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)). "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359 (internal quotation marks and citations omitted). These threats "must be distinguished from idle, careless talk, exaggeration, jests, or political hyperbole." *Metzinger*, 456 S.W.3d at 95 n. 10. A true threat is proven by evidence of a declaratory statement that expresses "an intent to cause an incident involving danger to human life," and showing that the listener was placed "in fear that the threat would be carried out." *Id.* at 96.

As discussed herein and by the juvenile court, D.J.T.S. communicated location-specific and detailed threats to commit a violent crime by using his gun to shoot up the Bode Middle School basketball game on December 15, 2021. He vowed to kill more than 180 people. He warned students not to come to school, showed photos of himself holding his gun, and repeated the threat to multiple students his science class. D.J.T.S. confirmed that he engaged in this conduct, and he showed photos of the gun to the school principal. The principal found the incident alarming enough that she promptly reported it to police, and D.J.T.S. was taken into custody to prevent any violence or disruption of the

7

basketball game. Based on this evidence, the juvenile court drew the reasonable inference "that if [D.J.T.S had] not been brought into custody and would have been free in light of the information of the pictures, the statements, the threat, it's highly likely that the basketball game would not have taken place."

The record establishes that more than one individual who heard D.J.T.S.'s statements believed them to be a true threat. *Novak*, 932 F.3d at 427. Moreover, at the time he made the statements, D.J.T.S. gave no indication that he intended the threats as a joke or exaggeration. Consequently, D.J.T.S.'s statements to students that he was going to shoot up the basketball game went beyond the scope of protected speech. *Id.* Viewed in the light most favorable to the judgment, there was sufficient evidence for the juvenile court to find that D.J.T.S. committed the offense of making a terrorist threat in the second degree. We deny the point on appeal.

### CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

8