

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110771 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 2222-CR00265-01 |
| | ) | |
| ASHLEY COLVILLE, | ) | Honorable David A. Roither |
| | ) | |
| Respondent. | ) | Filed: June 30, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

## OPINION

Appellant State of Missouri appeals the dismissal with prejudice of the indictment of

Respondent Ashley Colville for involuntary manslaughter in the second degree, a class E felony,

arising from an intersection collision between her vehicle and a moped operated by decedent

Rodney Larue. The State argues that the trial court plainly erred[1] by granting the motion to

dismiss because (1) the indictment was viable in that a jury could conclude under the facts

alleged that Colville acted with criminal negligence in committing second-degree involuntary

manslaughter in violation of section 565.027.1,[2] (2) the court should not have reviewed, in

---

[1] The State concedes that its claims of error were not preserved and therefore our plain error review standards apply here.

[2] All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2021), unless otherwise indicated.

connection with its consideration of the motion to dismiss, a video from a nearby security camera that captured the collision, and (3) by considering the video and other factual matters beyond the indictment, the court improperly acted as the trier of fact.

We deny plain error review under Rule 30.20[3] for two reasons. First, to the extent any error occurred in connection with the trial court's review of the video and other factual matters beyond the indictment as part of its consideration of Colville's Rule 24.04(b) motion to dismiss the indictment, the State invited such purported errors. *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012) (Although plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct a party's invited errors.).

Second, the State failed to satisfy the first step in our two-step plain error analysis because the errors it claims occurred here were not "evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)) (internal citation omitted). While the indictment may have been technically adequate under Rule 23.01(b) and the approved charge, MACH–CR 14.12,[4] we conclude that the circuit court had the authority under Rule 24.04(b) and under the circumstances of this case to determine as a matter of law whether Colville's conduct in failing to yield and to signal her turn satisfied the criminal negligence element of involuntary manslaughter in the second degree.

## Background

The incident giving rise to this tragic case occurred on September 27, 2021, at the intersection of Arsenal Street and Ivanhoe Avenue in the City of St. Louis. Colville, while turning left from eastbound Arsenal onto northbound Ivanhoe, failed to signal her turn and failed

---

[3] All rule references are to the Missouri Supreme Court Rules (2022).
[4] All references to the Missouri Approved Charges–Criminal (MACH–CR) 2d (effective 1-1-17), unless otherwise indicated.

2

to yield to Rodney Larue who was approaching on a moped from westbound Arsenal. As a result, Larue struck the right side of Colville's vehicle and later died from his injuries.

On April 19, 2022, Colville was charged with one count of involuntary manslaughter in the second degree. On June 8, 2022, Colville filed her motion to dismiss the indictment under Rule 24.04(b). At the June 10, 2022, hearing on the motion, an extensive record was made by counsel and the court regarding the factual circumstances of the case beyond the allegations of the indictment. Specifically, the parties related to the court the specific time of the accident, the types of vehicles involved, and the fact that the victim impacted the Colville vehicle. Moreover, the State consented to the court's review of a security video from a nearby business that captured the accident and thus permitted the court to witness the conditions at the time of the accident and the relative speed of the vehicles.

In its order dismissing the indictment, the court first noted that the indictment "facially" met the requirements of Rule 23.01(b) in that it identified the crime alleged and the conduct giving rise to the alleged crime – specifically, that Colville collided with Larue "with criminal negligence in that [Colville] failed to yield to the victim and failed to use a turn signal." Then, after considering extensive caselaw interpreting the type of conduct that may or may not satisfy the "acts with criminal negligence" element of a section 565.027.1 violation, the court observed that "not every accident is in and of itself a criminal act, and not every negligent act resulting in death from an accident is necessarily a criminally negligent act." In dismissing the indictment, the court concluded as a matter of law that Colville's actions did not constitute the offense charged because her conduct in slowly turning left in front of Larue's approaching moped was not the type of "gross deviation" that would justify such a felony charge.

3

## Standard of Review

Generally, we review the trial court's ruling on a motion to dismiss a criminal charge for an abuse of discretion. *State v. Metzinger*, 456 S.W.3d 84, 89 (Mo. App. E.D. 2015) (citing *State v. Rodgers*, 396 S.W.3d 398, 400 (Mo. App. W.D. 2013). But "[w]here, as here, the facts are uncontested and the only issue is a matter of statutory construction, the trial court's dismissal of a felony complaint is subject to *de novo* review" by this Court. *State v. Rodgers*, 396 S.W.3d 398, 400 (Mo. App. W.D. 2013); *see also Metzinger*, 456 S.W.3d at 89 (citing *State v. Rousseau*, 34 S.W.3d 254, 259 (Mo. App. W.D. 2013)).

We may consider unpreserved errors under our plain error standard of review. *See State v. Speed*, 551 S.W.3d 94, 98 (Mo. App. W.D. 2018) (citing *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015)); Rule 30.20 ("Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."). Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim—no matter if it is statutory, constitutional, structural, or of some other origin—is evaluated by this Court's plain error framework without exception. *State v. Brandolese*, 601 S.W.3d 519, 530 (Mo. banc 2020).

Review for plain error involves a two-step process. The first step requires a determination of whether the claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Baumruk*, 280 S.W.3d at 607 (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)) (internal citation omitted); Rule 30.20. All prejudicial error, however, is not plain error, and "[p]lain errors are those which are 'evident, obvious, and clear.'" *Baumruk*, 280 S.W.3d at 607 (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999)) (internal citation omitted). If plain error is found, the court then

4

must proceed to the second step and determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.*

Moreover, "plain error review is discretionary," and "this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Brandolese*, 601 S.W.3d at 531 (citing *Bolden*, 371 S.W.3d at 806).

## Discussion

In its brief and during its spirited oral argument, the State claims the trial court plainly erred by improperly adjudicating the facts beyond the indictment, including the video and the additional facts *both* parties offered, when it should have simply decided whether the indictment alone alleged sufficient facts from which a jury could find Colville guilty of the crime of second-degree involuntary manslaughter. As stated, we deny plain error review here because (1) the State invited any error that it claims occurred here, and (2) the State has failed to satisfy the first step in the plain error analysis by demonstrating that the claimed errors were evident, obvious, and clear and facially established substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted.

"Generally, an information or indictment is sufficient if it contains all essential elements of the offense as set out in the statute creating the offense." *Metzinger*, 456 S.W.3d at 91 (citing *State v. O'Connell*, 726 S.W.2d 742, 746 (Mo. banc 1987)). "However, where 'the statute uses generic terms in defining the offense, it is necessary to recite sufficiently the conduct constituting the offense in order to accomplish the purpose of the indictment or information.'" *Id.* (quoting *Liggins v. State*, 786 S.W.2d 207, 208 (Mo. App. E.D. 1990)). "In addition, an indictment or information is generally sufficient 'if it is substantially consistent with the forms of indictments or informations which have been approved by the Missouri Supreme Court.'" *Id.* (quoting

5

*Griffin v. State*, 185 S.W.3d 763, 766 (Mo. App. E.D. 2006) and citing Rule 23.01(b)).

"Significantly, the approval of a pattern charge does not foreclose 'any legal, constitutional, procedural, pleading, evidentiary, instructional or other issue which may arise in cases pleaded, tried or appealable under any laws covered by the MACH-CR forms.'" *Id.* (citing *State v. Reese*, 687 S.W.2d 635, 637 (Mo. App. S.D. 1985) (quoting MACH–CR 1.00.2 (effective 1-1-79)).

"One purpose of an indictment or information is to 'permit[ ] the trial court to determine whether sufficient facts are averred to support a conviction.'" *Id.* at 93 (quoting *State v. Atterberry*, 659 S.W.2d 339, 341 (Mo. App. S.D. 1983)). "Thus, '[a]n indictment is bad and is properly dismissed if all the facts stated are true, and yet the accused can be innocent of the crime intended to be charged, or if the acts alleged in the indictment if proven do not constitute a violation of the law.'" *Id.* (quoting 42 C.J.S. INDICTMENTS § 160 and citing *Rousseau*, 34 S.W.3d at 262; *State v. Harrison*, 805 S.W.2d 241, 243 (Mo. App. E.D. 1991)). "Defenses based on defects in the information or indictment are generally required to be raised by motion before trial[.]" *Id.* (quoting *Rousseau*, 34 S.W.3d at 258); *see also* Rule 24.04(b)(2). If a charge is not proper, the court may order it dismissed with prejudice. *Metzinger*, 456 S.W.3d at 98 (citing *State v. Fernow*, 328 S.W.3d 429, 431 (Mo. App. E.D. 2010) and *State v. Stringer*, 36 S.W.3d 821, 823 (Mo. App. S.D. 2001)).

Turning now to the circumstances of this case, we find that *State v. Metzinger* is on all fours with this case and disposes of each of the State's arguments here. In *Metzinger,* the State charged the defendant by information with the class A misdemeanor of making a terrorist threat, in violation of section 574.115 (Cum. Supp. 2013), in the form of four messages posted on the social media network Twitter regarding the then-ongoing 2014 baseball World Series clash

between the St. Louis Cardinals and the Boston Red Sox.[5] *Id.* at 88. The claim was that the messages were terrorist threats because they made veiled references to certain aspects of the 2013 Boston Marathon terrorist bombing. *Id.* at 88–89.

In his motion to dismiss the information, Metzinger argued that his messages did not satisfy the "threat" element of section 574.115. *Id.* The trial court agreed and this Court affirmed the dismissal with prejudice. *Id.* at 89, 99. We held in *Metzinger* that it was proper for the court to rule as a matter of law whether the information charged a crime under section 574.115 and that the court did not improperly act as the trier of fact because the factual matters before it, including those offered by the parties beyond the information, were undisputed. *Id.* at 93–94.

With respect to the trial court's review of factual matters beyond the indictment, the *Metzinger* Court stated as follows:

> To the extent the State implies that the trial court erred in considering the four tweets because "no evidence was ever presented from which the trial court could make that [true-threat] determination," we note that the State volunteered the four tweets in response to Defendant's motion to dismiss. Additionally, without objection, counsel for the State and Defendant both discussed and analyzed the language of the four tweets at the hearing on Defendant's motion to dismiss and at oral argument on appeal. Where, as here, the State proffers the allegedly threatening communications in response to a defendant's motion to dismiss the information, it cannot fault the trial court for considering those communications when ruling upon the motion.

*Id.*

---

[5] In 2013, a person committed a class A misdemeanor under section 574.115.1(4) when he "communicates a threat to cause an incident or condition involving danger to life ... [w]ith criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation."

Again, under our plain error review standards, we find no fault here given that the State invited the trial court to review the video and other facts beyond those alleged in the indictment as part of its review of the Rule 24.04(b) motion before it. *Bolden*, 371 S.W.3d at 806.

On the next question before us—whether the trial court, and this Court for that matter, is empowered to dismiss an indictment as a matter of law—*Metzinger* is again highly instructive with its dictate that "even where an information tracks the MACH–CR and/or the relevant statute and adequately informs a defendant of the charges against him, a defendant may properly raise legal, constitutional, or other issues … [and that] we must nevertheless affirm the dismissal if the trial court properly concluded that the information failed to state an offense in violation of [the criminal statute]." 456 S.W.3d at 92.

Thus, while the information here tracked MACH–CR 14.12 and adequately informed Colville of the charge against her, the trial court not only had the authority based on the foregoing principles but was invited by the parties to determine on these undisputed facts whether Colville's conduct satisfied the criminal negligence element of the crime.[6]

The court's detailed and well-reasoned order reflects a painstaking review of this case including the relevant caselaw addressing the question of under what factual circumstances ordinary negligence in the operation of a motor vehicle may become criminal negligence subjecting the driver to a felony conviction under section 565.027.1. In the trial court's survey of relevant caselaw, a pattern emerges whereby drivers that are subject to serious charges like the

---

[6] Criminal negligence is the "failure to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 556.061(16); *accord* section 562.016.5 (2016) ("A person 'acts with criminal negligence' or is criminally negligent when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.").

8

prosecution here have engaged in some exacerbating conduct beyond ordinary driver negligence. *State v. Dueker*, 990 S.W.2d 670, 679–80 (Mo. App. E.D. 1999) (intoxication); *State v. Morrison*, 174 S.W.3d 646, 649–50 (Mo. App. W.D. 2005) (high speed); *State v. Wilson*, 333 S.W.3d 526, 526–28 (Mo. App. S.D. 2011) (intoxication); *State v. Putney*, 473 S.W.3d 210, 215, 220–21 (Mo. App. E.D. 2015) (likely intoxication).

Finally, we also rely on *Metzinger* to reject the State's related argument that the circuit court improperly acted as the trier of fact.[7] In the following passage, *Metzinger* adroitly juxtaposed (1) factual determinations that are jury questions and, therefore, inappropriate for a trial court to determine on a motion to dismiss an information, with (2) the legal question whether facts as alleged in an information are sufficient to subject the defendant to prosecution under the criminal statute:

> We do not agree that under the circumstances of this case the "true threat" analysis was a jury question. Defendant's motion to dismiss properly raised the legal question of whether Defendant's tweets were the kind of communication sufficient, as a matter of law, to subject Defendant to prosecution under Section 574.115. Accordingly, if the tweets were not "true threats," the information charged no crime and was insufficient as a matter of law.

*Id.* at 94.

As in *Metzinger,* the trial court here simply decided whether these facts charged a crime, a task the court was invited to perform, *Bolden,* 371 S.W.3d at 806, and the State is not entitled

---

[7] In *Metzinger*, the State initially asserted in its brief that whether the defendant's statements constituted "true threats" was a question of fact properly left for the jury but later conceded at oral argument that "it's a determination as a matter of law" and that "I do not believe [the trial judge] had all the facts that he could make that determination from." While here the State has not explicitly conceded that the determination whether Colville's actions constituted criminal negligence was a legal determination properly made by the trial court, the State implicitly did so by jointly submitting the evidence to the court, which it conceded was the entirety of the evidence on the accident, for the court's consideration in determining the threshold question before it.

to plain error review because it has failed to demonstrate any evident, obvious, and clear error that facially established substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. *Baumruk*, 280 S.W.3d at 607.

## Conclusion

For the foregoing reasons, we affirm.

                                                       _____

James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J., concur.

10